1  Michael Nourmand, Esq. (SBN 198439)
   mnourmand@nourmandlawfirm.com
2  James A. De Sario, Esq. (SBN 262552)
   jdesario@nourmandlawfirm.com
3  **THE NOURMAND LAW FIRM, APC**
   8822 West Olympic Boulevard
4  Beverly Hills, California 90211
   Telephone (310) 553-3600
5  Facsimile  (310) 553-3603

6  Attorneys for Plaintiffs,
   GORDON CHAPPELLE, on behalf of
7  himself and all others similarly situated

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  GORDON CHAPPELLE, on behalf of          ) CASE NO.:2:24-cv-02667-PVC
    himself and all others similarly situated, )
12                                           ) [Assigned to Hon. Pedro V. Castillo]
                                             )
13              Plaintiffs,                  ) **NOTICE OF MOTION AND**
                                             ) **MOTION FOR FINAL**
14       v.                                  ) **APPROVAL OF CLASS ACTION**
                                             ) **SETTLEMENT;**
15                                           ) **ENHANCEMENT AWARD,**
                                             ) **REASONABLE ATTORNEYS'**
16  NATIONAL RAILROAD PASSENGER              ) **FEES AND COSTS;**
    CORPORATION; and DOES 1 through          ) **MEMORANDUM OF POINTS**
17  100, Inclusive                           ) **AND AUTHORITIES;**
                                             ) **DECLARATION OF MICHAEL**
18              Defendants.                  ) **NOURMAND IN SUPPORT**
                                             ) **THEREOF**
19                                           )
                                             ) **[Concurrently Filed with Declaration of**
20                                           ) **Lindsay Romo; Declaration of Gordon**
                                             ) **Chappelle; and [Proposed] Order**
21                                           ) **Granting Final Approval of Class Action**
                                             ) **Stipulation of Settlement & Final**
22                                           ) **Judgment]**
                                             )
23                                           ) DATE:          November 4, 2025
                                             ) TIME:          10:00 a.m.
24                                           ) COURT RM.:     590
                                             )
25  _____ )

26  ///

27  ///

28  ///

- 1 -

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 4, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 590 of the United States District Court, Central District of California, plaintiff Gordon Chappelle ("Plaintiff") acting as the preliminarily approved representative of the settlement class, will and hereby does move this Court for entry of an Order:

1.    Finally certifying the settlement class;

2.    Finally approving the representative Plaintiff as Class Representative;

3.    Finally approving Michael Nourmand, Esq. and James A. De Sario, Esq. of The Nourmand Law Firm, APC as Class Counsel;

4.    Finally approving the settlement claims under the terms set forth in the Settlement Agreement and Release ("Settlement Agreement")[1];

5.    Finally approving the payment of reasonable costs of administration in the amount of $9,000 to Simpluris, Inc. from the Gross Settlement Amount;

6.    Finally approving an enhancement payment of $10,000 to the named plaintiff, Gordon Chappelle for his efforts in prosecuting this class action;

7.    Finally approving payment of reasonable attorneys' fees to Class Counsel in the amount of $460,000 which is approximately one-third of the revised Gross Settlement Amount, the Gross Settlement Amount was increased from $1,200,000 to $1,380,000 as a result of the escalator clause being triggered, negotiated by the parties as part of the Settlement Agreement;

8.    Finally approving reimbursement of Class Counsel's costs in the amount of $14,438.49; and

9.    Entering a Final Judgment consistent with the terms of the Settlement Agreement, by signing and filing the proposed Order submitted concurrently herewith.

---

[1] A true and correct copy of the Settlement Agreement, without the exhibits, is attached as Exhibit "1" to the Declaration of Michael Nourmand ("Decl. Nourmand") for the Court's convenience.

1    Good cause exists for the granting of this Motion in that the proposed

2    settlement is fair, reasonable and adequate.

3    This Motion is based on this Notice of Motion and Motion, the attached

4    Memorandum of Points and Authorities, the Settlement Agreement, the Declaration

5    of Lindsay Romo and all exhibits attached thereto, the Declaration of Gordon

6    Chappelle, the Declaration of Michael Nourmand and all exhibits attached thereto,

7    any other papers, files and documents filed with this Court, and upon such further

8    oral and/or documentary evidence and argument as may properly be presented to the

9    Court at the time of the hearing of this matter.

10

11    DATED: October 3, 2025                    THE NOURMAND LAW FIRM, APC

12

13                                      By:    */s/ Michael Nourmand*
14                                             Michael Nourmand, Esq.
                                               James A. De Sario, Esq.
15                                             Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff, Gordon Chappelle, individually and on behalf of the preliminarily approved putative class[2], seek final approval of a proposed settlement of this wage-and-hour class action filed against defendant, National Railroad Passenger Corporation ("Defendant")[3].  As this Court previously found in preliminarily approving the Settlement on April 30, 2025, the Settlement Agreement provides a substantial benefit to the settlement class in the form of monetary compensation. Information that has surfaced since this Court preliminarily approved the Settlement only reiterates that the Settlement is fair, reasonable and adequate.

Having been fully apprised of the Settlement terms, it is now clear that the settlement class overwhelmingly support the Settlement.  The most important fact evidencing the settlement class' support for the Settlement is that *no* Class Member has opted out of the Settlement and *no* Class Member has objected to the Settlement.  Please see Declaration of Lindsay Romo, paragraphs 12 and 13.

The Settlement is plainly fair, reasonable and adequate in light of the probable outcome of further litigation relating to liability and damages issues.  As this Court knows from the Motion for Preliminary Approval[4], the Parties were able to reach a Settlement Agreement resolving the disputes in this matter after a hotly contested but professional full-day session of mediation before a well respected mediator in the area of wage and hour class actions, Hon. Amy D. Hogue (Ret.) ("Judge Hogue").  Because the Settlement Agreement was reached at arms-length before a well-respected mediator, the Court can presume, under California law, that

---

[2] The named Plaintiff and putative class are referred to collectively herein as "Plaintiffs" or the "Settlement Class."

[3] Defendant and Plaintiffs are referred to collectively herein as the "Parties."

[4] Plaintiffs incorporate by reference all of the pleadings and evidence filed in connection with the Motion for Preliminary Approval as additional support for this Motion.

it is non-collusive, fair and reasonable.  Each side vigorously advocated for its position, and at the conclusion of mediation, an arms-length settlement was reached.

In summary, Class Counsel has achieved an excellent result in this litigation, embodied in the Settlement Agreement.  The proposed class settlement provides substantial monetary benefits to settlement class members and is a product of diligent, aggressive and expeditious efforts of Class Counsel to obtain the best possible result for the settlement class.  A significant number of settlement class members have shown their support of the Settlement *no* Class Member submitted a valid request for exclusion and there were *no* objections filed.

For all of the reasons expressed herein, the Parties respectfully submit that the Settlement Agreement, already approved by this Court at the preliminary approval proceedings, meets the applicable criteria for this Court's final approval, and that it is fair, adequate, and reasonable and in the best interest of the settlement class.  Accordingly, final approval should be granted.

## II.   <u>PROCEDURAL HISTORY OF THE CASE</u>

On January 4, 20204, Plaintiff filed a putative wage and hour Class Action Complaint ("Complaint") with the Los Angeles Superior Court for various alleged Labor Code violations and Unfair Competition.  On April 2, 2024, Defendant removed the action to the United States District Court, Central District of California.

On April 24, 2024, after meeting and conferring, pursuant to Local Rule ("LR") 7-3, Plaintiff agreed to file a First Amended Class Action Complaint ("FAC"), withdrawing his causes of action for meal and rest break and adding a cause of action for civil penalties under the Private Attorneys' General Act ("PAGA").  Plaintiff agreed to withdraw the meal and rest break claims based on case law supporting that these claims are preempted by the Adamson Act, Hours of Service Act, Federal Railroad Safety Act and Railway Labor Act.  On May 23, 2024, after another meet and confer, pursuant to LR 7-3, Plaintiff agreed to

1  withdraw the cause of action for overtime wages due to preemption arguments.
2  Thereafter, the Parties agreed to proceed with discovery with the following
3  remaining claims: (1) Failure to Pay Minimum Wages; (2) Failure to Pay All Wages
4  Upon Termination; (3) Failure to Provide Accurate Wage Statements; (4) Unfair
5  Competition; and (5) Civil Penalties under PAGA.  The Complaint, FAC and SAC,
6  as mentioned above, will be referred to as the "Litigation."

7      After further meet and confer and the California Supreme Court's decision in
8  *Stone v. Alameda Health System* (2024) 16 Cal.5th 1040 in which the court held that
9  public employers are not subject to PAGA penalties and Unfair Competition,
10 Plaintiff agreed to file a Third Amended Class Action Complaint withdrawing the
11 claims under PAGA and Unfair Competition.  The Complaint, FAC, SAC and TAC
12 will be referred to as the "Litigation."

13     In the Litigation, Plaintiff alleges, *inter alia*, that Defendant failed to pay
14 minimum wages, failure to provide accurate wage statements, and failed to pay
15 wages upon termination as a result of Defendant's uneven rounding practice.
16 Defendant denies each of the allegations asserted in the Litigation, has repeatedly
17 and continues to assert defenses to Plaintiff's claims and contentions, and expressly
18 denies that it engaged in any wrongdoing or has any liability arising out of any of
19 the facts or conduct alleged in the Litigation.

20     Class Counsel propounded formal written discovery and engaged in informal
21 discovery which yielded information and documentation concerning the claims set
22 forth in the Litigation, such as obtaining time and payroll records for seventy-three
23 class members, Plaintiff's personnel file, applicable policies and procedures related
24 to the claims asserted, Declaration of Jeremy Mileski, who declared that only the
25 employees assigned to the mechanical department used a time keeping system called
26 WMS, total number of class members during the class period, and the average
27 hourly rate.  Furthermore, counsel for the Parties have investigated the law as
28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  applied to the facts discovered regarding the alleged claims of Plaintiff and potential
2  defenses thereto, and the potential damages claimed by Plaintiff.

3      Counsel for the respective Parties engaged in extensive discussions about the
4  strength and weaknesses of the claims and defenses.  Plaintiff and Defendant
5  undertook extensive mediation efforts with Judge Hogue on August 27, 2024.  The
6  Parties were not able to reach a settlement at mediation.  Judge Hogue continued
7  settlement discussions with counsel which resulted in her issuing a mediator's
8  proposal, which the Parties ultimately accepted.

9      The Parties concluded that there were benefits associated with settling the
10  Litigation.  Specifically, the Parties concluded, after taking into account the sharply
11  disputed factual and legal issues involved in this Litigation, the risks attending
12  further prosecution, and the substantial benefits to be received pursuant to the
13  compromise and settlement of the Litigation as set forth in this Settlement
14  Agreement, that settlement on the terms set forth herein is in the best interest of
15  Plaintiff, the proposed class, and Defendant, and is fair and reasonable.

16  **III.**   **TERMS OF THE SETTLEMENT**

17  The key terms of the settlement are as follows:

18     ●   Defendant will stipulate, for purposes of this settlement only, to
19  certification of a class defined as: All persons employed by Defendant
20  in California and classified as non-exempt mechanical employee during
21  the period January 4, 2021 through the date when the total workweeks
22  reaches 73,585 workweeks.  The escalator clause was triggered
23  increased in the total workweeks to 88,545 workweeks which resulted
24  in the Defendant increased the Gross Settlement Amount from
25  $1,200,000 to $1,380,000.

26     ●   Defendant will pay a maximum of $1,380,000, which is referred to as
27  herein as the Gross Settlement Amount.

28  ///

- Class Members will be paid their proportionate share based on the total workweeks worked during the class period.
- The Settlement Administration costs of $9,000 will be paid out of the Gross Settlement Amount.
- Class Counsel's attorneys' fees and costs will be paid out of the Gross Settlement Amount.
- Class Counsel will apply for, and Defendant will not oppose, attorneys' fees not to exceed $460,000 based on the new Gross Settlement Amount, which represents one-third of the Gross Settlement Amount and litigation costs not to exceed $20,000.
- Defendant's employer's share of payroll taxes will be funded by the Defendant in addition to the Gross Settlement Amount.
- Class Counsel will apply for, and Defendant will not oppose, an enhancement award, not to exceed $10,000 for Plaintiff. The enhancement award will be paid out of the Gross Settlement Amount.

As set forth below, the Settlement meets all the criteria for final approval because it is fair, adequate and reasonable.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT BECAUSE IT IS FAIR AND REASONABLE

Before any class action can be settled, Federal Rules of Civil Procedure 23(e) "requires district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026; *Class Plaintiffs v. City of Seattle* (9th Cir.1992) 955 F.2d 1268, 1276. This determination requires a balancing of several factors which may include, among others, some or all of the following: strength of Plaintiff's case; the risk, expense, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery

completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026; *Officers for Justice v. Civil Serv. Comm'n of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625; *In re Mego Financial Corp. v. Securities Litigation* (9th Cir. 2000) 213 F.3d 454.

Where a settlement is reached on terms agreeable to all parties, a court should disapprove of the settlement "only with considerable circumspection." *Jamison v. Butcher & Sherrerd* (E.D. Pa 1975) 68 F.R.D. 479, 481. Courts act within their discretion in approving settlements which are fair, not collusive and take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Industry Antitrust Litigation* (5th Cir. 1979) 507 F.2d 167, 179.

Furthermore, a proposed class action settlement is *presumed* fair under the following circumstances: (1) the parties reached settlement after arms' length negotiations; (2) investigation and discovery were sufficient to allow counsel and the court to act intelligently; (3) counsel is experiences in similar litigation; and (4) the percentage of objectors is small. *Newberg on Class Actions* (4th ed. 2002) §11.41. The declaration of Class Counsel Michael Nourmand as well as the other declarations and exhibits filed, demonstrate that the proposed settlement was the product of serious, informed and non-collusive negotiations, otherwise proper and one which should be given final approval by the Court, and demonstrate Counsels' experience in this type of litigation. With application of these factors, it is manifest that the proposed settlement provides a benefit to the Class and is fair, adequate and reasonable.

A.    **The Settlement Is The Product of Arm's-Length And Informed Negotiations**

This Settlement was reached following extensive, arms-length negotiations before mediator Judge Hogue. Although conducted in a professional manner, the

1  settlement negotiations were adversarial and contentious.  As addressed in greater

2  detail in the Declaration of Michael Nourmand, the lengthy and substantial

3  negotiations between the Parties took into account the remedial interest and the

4  strengths and weaknesses of the claims of the settlement class, and potential

5  defenses to the wage and hour claims.

6       Class Counsel and Defendant's counsel aggressively advanced the Parties'

7  respective positions throughout the litigation and settlement negotiations.  The

8  negotiations were conducted, as discussed herein, after considerable investigation

9  and analysis by capable and experienced Class Counsel.  After a full-day session of

10  mediation with Judge Hogue, the Parties were able to reach a class wide settlement.

11       Class Counsel and Plaintiffs have concluded that it is in the best interest of

12  the settlement class to settle this class action for the substantial benefits obtained for

13  the settlement class members under the Settlement Agreement, in light of the risks

14  associated with obtaining class certification and the costs inherent in extensive

15  additional discovery.  As such, the Parties ultimately recognized that the inherent

16  expense, delay and uncertainty of trial and the numerous potential appellate issues

17  raised in this case present the real danger that an ultimate victory by either side may

18  be of substantially less value than the Settlement.

19     **B.**    **The Settlement Was Reached After Extensive Investigation,**

20           **Discovery, And Analysis of Class Claims**

21       Prior to mediation, the Parties diligently engaged in formal and informal

22  discovery, which yielded information and documentation concerning the claims set

23  forth in the Litigation, such as obtaining time and payroll records for seventy-three

24  class members, Plaintiff's personnel file, applicable policies and procedures related

25  to the claims asserted, Declaration of Jeremy Mileski, who declared that only the

26  employees assigned to the mechanical department used a time keeping system called

27  WMS, total number of class members during the class period, and the average

28  hourly rate.  Furthermore, counsel for the Parties have investigated the law as

1  applied to the facts discovered regarding the alleged claims of Plaintiffs and
2  potential defenses thereto, and the potential damages claimed by Plaintiffs.  While
3  counsel may disagree on the facts and legal implications thereof, counsel on both
4  sides have completed sufficient work to ensure that the presentation made to the
5  Court in the course of proposing the Settlement at issue is complete, thorough, and
6  accurate.

7      Based on this thorough investigation of the facts, Class Counsel believes that
8  the revised Gross Settlement Amount of $1,380,000 is not only within the
9  reasonable standard, but constitutes an excellent result as it has been shown by the
10  number of settlement class members that have participated in the settlement.
11  Furthermore, in light of the inherent difficulty and risks of litigation, the proposed
12  settlement terms herein are eminently reasonable.  It is equally well settled that a
13  proposed settlement is not to be measured against a hypothetical ideal result that
14  might have been achieved. *7-Eleven Owners for Fair Franchising v. Southland*
15  *Corp.* (2000) 85 Cal.App.4th 1135, 1150 (quoting *Linney v. Cellular Alaska*
16  *Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242, with approval: "This court has
17  aptly held that it is the very uncertainty of outcome in litigation and avoidance of
18  wasteful and expensive litigation that induce consensual settlements.  The proposed
19  settlement is not to be judged against a hypothetical or speculative measure of what
20  might have been achieved by the negotiators."); *Cotton v. Hinton* (5th Cir. 1977) 559
21  F.2d 1326, 1330 ("The trial court should not make a proponent of a proposed
22  settlement 'justify each term of settlement against a hypothetical or speculative
23  measure of what concessions might have been gained; inherent in compromise is a
24  yielding of absolutes and an abandoning of highest hopes.'") (quoting *Milstein v.*
25  *Werner* (S.D.N.Y. 1972) 57 F.R.D. 515, 524-525).

26      Given the nature of any litigation, especially class action litigation,
27  subsequent litigation would involve extensive further written discovery, numerous
28  depositions, expert discovery, motion practice related to class certification,

1 | discovery disputes, and summary judgment and/or summary adjudication.
2 | Moreover, proving any individual damages would be a lengthy and burdensome
3 | process.  Thus, after carefully analyzing Plaintiffs' claims, Class Counsel and
4 | Plaintiffs concluded that this Settlement is in the best interest of the settlement class
5 | members.

6 |  **C.    Plaintiffs' Case Contains Significant Risks**

7 | In contrast to the certain financial benefits that the proposed Settlement
8 | provides to the settlement class, continued litigation of this Action would involve
9 | substantial risks for the settlement class.  Defendant has asserted a number of
10 | potentially dispositive defenses and could potentially pursue summary judgment
11 | with regard to one or more of these defenses should the litigation continue.
12 | While Class Counsel and Plaintiffs believe that it is possible that they would
13 | ultimately have prevailed at class certification and trial in this case, assuming that
14 | they would have proceeded as a class action, the result is highly uncertain.
15 | Plaintiffs must therefore recognize that the issue of liability is problematic and the
16 | risks of litigation are substantial.  If Plaintiffs were unable to prevail on their
17 | theories, a judgment would be entered for Defendant, and the settlement class would
18 | receive nothing.  The proposed Settlement, in contrast, offers significant value to
19 | the settlement class that fairly and reasonably accounts for the very real risks of
20 | continued litigation.

21 |  **D.    The Settlement Provides Substantial Benefits To The Settlement**
22 |  **Class**

23 | The relief provided to the settlement class by this Settlement is significant
24 | and substantial.  As noted above, no settlement class member has opted-out and no
25 | settlement class member has objected to the Settlement.  Accordingly, the
26 | Settlement Agreement provides a significant benefit to the settlement class.
27 | ///
28 | ///

1    **E.    Class Counsel Are Experienced Class Action Litigators**

2    Class Counsel are respected members of the California Bar with strong

3    records of vigorous and effective advocacy of their clients, and they are experienced

4    in handling complex class action litigation.  Both Class Counsel and Plaintiff were

5    prepared to litigate the claims in this Action, but they strongly and unequivocally

6    support the proposed Settlement as being in the best interest of the settlement class

7    based on the circumstances referenced herein.

8    Class Counsel is experienced in wage and hour class action litigation.  The

9    Nourmand Law Firm, APC is acting as lead counsel in over twenty other wage and

10    hour class actions.  Class Counsel has been appointed class counsel on several wage

11    and hour class actions and one FACTA class action.  Thus, Class Counsel is

12    sufficiently experienced and qualified to evaluate the Class Members' claims and

13    viability of Defendant's defenses.

14    In the opinion of Class Counsel, the recovery for each class member is well

15    within the acceptable range for this type of action.  This Settlement is also favorable

16    given that settlement class will promptly receive compensation rather than facing

17    uncertainties inherent in further litigation and waiting for years for this action to be

18    tried.  It is also telling that the settlement class have overwhelmingly supported the

19    Settlement on the terms set forth in the Settlement Agreement.  Based on all

20    considerations, this Settlement is highly favorable and is in the best interest of the

21    settlement class.

22    **F.    There Was No Valid Opt-Out and No Objections**

23    A lack of or small number of objections and opt-outs likewise indicates that

24    the Settlement is fair, reasonable, and adequate.  *Laskey v. Int'l Union* (6th Cir.

25    1981) 638 F.2d 954, 957 ("Significantly, only seven out of 109 made any kind of

26    objection and the objections made indicated these employees did not want to

27    compromise at all but wanted full benefits, rather than making any complaint

28    directed to the adequacy of their legal representation"); *Shlensky v. Dorsey* (3rd Cir.

1    1979) 574 F.2d 131, 148 (concluding that settlement was fair where, among other
2    things, "very few" class members objected); *In re SmithKline Beckman Corp. Sec.*
3    *Litig.* (E.D. Pa. 1990) 751 F. Supp. 525, 530 ("The Court ordered that class
4    members be notified by mail and publication, and not one has lodged an objection to
5    the settlement's terms. Both the utter absence of objections and the nominal number
6    of shareholders who have exercised their right to opt out of this litigation militate
7    strongly in favor of approval of the settlement"). In the instant matter, there was ***no***
8    opt-out and ***no*** objections filed out of 715 Class Members, which weigh strongly in
9    favor of final approval.

10        In sum, all relevant factors support final approval of the Settlement. The
11   Parties negotiated at arm's-length and in good faith under the supervision of an
12   experienced and well-respected mediator. Class Counsel also engaged in extensive
13   investigation, discovery, and analysis of class claims. Moreover, Class Counsel,
14   who are experienced class action litigators, strongly believe that this Settlement
15   provides an excellent result to the settlement class. Lastly, the fact that there were
16   no objections filed and no valid opt-out militates strongly in favor of approval of the
17   Settlement. For the foregoing reasons, this Court should conclude that under the
18   circumstances of this case, the proposed Settlement is fair, adequate, and well
19   within the range of reasonableness.

20        V.    **THE PAYMENT TO THE SETTLEMENT ADMINISTRATOR IS**
21              **REASONABLE**

22        The Settlement Administrator has fulfilled its duty to prepare and send the
23   Notice to all settlement class members, in English and Spanish. Moreover, the
24   Settlement Administrator has also fulfilled its duty to provide a report detailing the
25   following: (1) total number of members of the settlement class who were sent the
26   notice; (2) total number of members of the settlement slass who timely requested to
27   opt-out from the Settlement; and (3) total number of members of the settlement class
28   who submitted timely objections to the Settlement. See Declaration of Lindsay

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  Romo, regarding Settlement Administration, served herewith.  The Settlement
2  Administrator has stated that a fee of $9,000 is the total cost of administration of the
3  Settlement, which is fair and reasonable.  Plaintiffs and Class Counsel request that
4  the Court approve payment of the final total cost of administration to Simpluris,
5  Inc., to be deducted from the Gross Settlement Amount.

6  **VI.    THE NAMED PLAINTIFF SHOULD BE AWARDED THE**
7  **REQUESTED ENHANCEMENT PAYMENT**

8       Plaintiff, Gordon Chappelle and Class Counsel request that the Court finally
9  approve an enhancement payment of $10,000 to the named plaintiff for the time,
10 effort, and the risks he undertook in participating in this Litigation.  Because a
11 named plaintiff is an essential ingredient of any class action, an enhancement award
12 is appropriate to induce individuals to step forward and assume the burdens and
13 obligations of representing the class.  In deciding the amount of an enhancement
14 award for a class representative, relevant factors include the actions the plaintiff has
15 taken to protect the interests of the class, the degree to which the class has
16 benefitted from those actions, and the amount of time and effort the plaintiff
17 expended in pursuing the litigation.  *Cook v. Niedert* (7th Cir. 1998) 142 F.3d 1004,
18 1015.

19      Particularly in employment class actions, such as discrimination or wage and
20 hour claims, named plaintiffs should be entitled to an enhancement award as an
21 incentive to take the risks associated with pursuing employment claims on behalf of
22 other employees.  "We also think there is something to be said for rewarding those
23 drivers who protect and help to bring rights to a group of employees who have been
24 the victims of discrimination."  *Thornton v. East Texas Motor Freight* (6th Cir.
25 1974) 497 F.2d 416, 420.  The guiding standard in determining the amount of an
26 incentive award is to evaluate the special circumstances, the personal risk attached
27 to being a named plaintiff, the time spent assisting in the litigation, the factual
28 expertise provided, other burdens suffered by the plaintiffs and the recovery.

1  *Roberts v. Texaco* (S.D.N.Y. 1997) 979 F.Supp. 185, 201.  Where the plaintiff is a

2  "present or past employee whose present position or employment credentials or

3  recommendation may be at risk by reason of having prosecuted the suit, who

4  therefore lends his or her name and efforts to the prosecution of litigation at some

5  personal peril, a substantial enhancement award is justified." *Id.*

6      In the instant case, the named plaintiff assisted Class Counsel on many

7  occasions with the investigation and prosecution of this action.  Plaintiff contributed

8  many documents to Class Counsel, made himself available for a full day mediation.

9  The amount sought for the class representative is in line with the enhancement

10  awards in similar wage and hour class actions.  Further, Defendant agreed to the

11  requested award of $10,000 to the named plaintiff, Gordon Chappelle.  As such, the

12  enhancement payment requested is intended to compensate Plaintiff for the critical

13  role he played in this case and the substantial time, efforts, and risks he undertook to

14  help secure the result obtained on behalf of the settlement class is well deserved and

15  warranted.  Furthermore, Plaintiff has provided Defendant a general release of his

16  claims in exchange for the enhancement payment.

17  **VII.  THE REQUESTED ATTORNEYS' FEES AND COSTS ARE**

18  **FAIR, REASONABLE, AND APPROPRIATE**

19      Class Counsels' application for an award of attorneys' fees in an amount of

20  approximately one-third[5] of the settlement value created on behalf of the settlement

21

22      [5]Numerous federal courts within the Ninth Circuit have awarded attorneys' fees up to
33.33% which Plaintiff seeks.  In fact, courts in the Ninth Circuit have routinely awarded up to
23  33.33% of the settlement both before and after class certification. *In re Pacific Enterprises
Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 379 (upholding award of 33 1/3% of $12 million
24  settlement); *Stuart v. Radioshack Corp.* (N.D. Cal. 2010) 2010 WL 3155645 *5 (1/3 of $4.5
million); *Singer v. Becton Dickinson and Co.* (S.D. Cal. 2010) 2010 WL 2196104 *8 (33 1/3% of
25  $1 million in a wage and hour class action); *Romero v. Producers Dairy Foods, Inc.* (E.D. Cal.
2007) 2007 WL 3492841, *2-4 (33 1/3 % of $240,000 in a wage and hour class action); *In re
26  Heritage Bond Litigation* (C.D. Cal. 2005) 2005 WL 1594403 *19 (33 1/3 of $27.83 million);
*Antonopulos v. North American Thoroughbreds, Inc.* (N.D. Cal. 1989) 723 F.Supp.1373, 1375
27  (32.8% of $42 million and holding that "[a]doption of a policy of awarding approximately 30% of
the fund as attorneys' fees in the ordinary cases is well-justified in light of the lengthy line of cases
28  which find such an award appropriate and reasonable."); *In re Businessland Sec. Litig.* (N.D. Cal.
1991) 1991 WL 427887 *1 (awarding 30% of $6 million, noting that recent trends indicated that

- 16 -

1 │ class is reasonable and fair.  The requested fee falls on the lower end of the Ninth

2 │ Circuit's historical benchmark for attorneys' fees of 20% to 50% of a common fund

3 │ and is fair compensation for undertaking complex, risky, expensive, and time-

4 │ consuming litigation on a contingent basis.

5 │    Further, through the notice sent to the settlement class, all members of the

6 │ settlement class were advised of the amount attorneys' fees requested and no

7 │ member of the settlement class objected to the Settlement and request for attorneys'

8 │ fees. This is evidence of the settlement class' belief that a higher attorney fee

9 │ percentage is reasonable.

10 │    The requested fees are extremely reasonable and the results achieved for the

11 │ settlement class are excellent.  Class Counsel respectfully requests that this Court

12 │ enter an Order to that effect.  Class Counsel seek a fee award calculated as a

13 │ percentage of the total value of the Gross Settlement Amount, for the successful

14 │ prosecution and resolution of this action.  California state and federal courts have

15 │ recognized that an appropriate method for determining an award of attorneys' fees is

16 │ based on a percentage of the total value of benefits to settlement class by the

17 │ settlement, not the amount claimed. *Laffitte v. Robert Half Int'l Inc.* (2016) 1

18 │ Cal.5th 480; *Serrano v. Priest* (1977) 20 Cal.3d 25, 34; *Boeing Co. v. Van Gemert*

19 │ (1980) 444 U.S. 472, 478; *Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 577 F.2d

20 │ 759, 769.  The purpose of this equitable doctrine is to avoid unjust enrichment of

21 │ counsel and to "spread litigation costs proportionally among all the beneficiaries so

22 │ that the active beneficiary does not bear the entire burden alone." *Id* at 769.

23 │    The California Supreme Court in *Laffitte v. Robert Half Int'l Inc.* (2016) 1

24 │ Cal.5th 480, a wage and hour class action wherein class counsel obtained a $19

25 │ million non-reversionary settlement on behalf of the class, approved the use of the

26 │ percentage of fund or common fund method to award 33.33% of the settlement

27 │ amount or $6,333,333.33 to class counsel for attorneys' fees.  The Court stated:

28 │

thirty percent of the settlement amount is about average).

1  "[w]hatever doubts may have been created by *Serrano III, supra,* 20 Cal.3d 25, [],
2  or the Court of Appeal cases that followed, we clarify today that use of the
3  percentage method to calculate a fee in a common fund case, where the award
4  serves to spread the attorney fee among all the beneficiaries of the fund, does not in
5  itself constitute an abuse of discretion.  We join the overwhelming majority of
6  federal and state courts in holding that when class action litigation established a
7  monetary fund for the benefit of the class members, and the trial court in its
8  equitably powers awards class counsel a fee out of that fund, the court may
9  determine the amount of a reasonable fee by choosing an appropriate percentage of
10  the fund created.  The recognized advantages of the percentage method - including
11  relative ease of calculation, alignment of incentives between counsel and the class, a
12  better approximation of market conditions in a contingency case, and the
13  encouragement it provides counsel to seek an early settlement and avoid
14  unnecessarily prolonging the litigation [] convince us the percentage method is a
15  valuable tool that should not be denied out trail courts." 1 Cal.5th 480, 503,
16  emphasis added.

17       Under the "common fund" doctrine, "a litigant or a lawyer who recovers a
18  common fund for the benefit of persons other than himself or his client is entitled to
19  a reasonable attorney's fee from the fund as a whole." *Boeing, supra,* 444 U.S. at
20  478.  The Supreme Court explained: "The doctrine rests on the perception that
21  persons who obtain the benefit of a lawsuit without contributing to its costs are
22  unjustly enriched at the successful litigants expense.  Jurisdiction over the fund
23  involved in the litigation allows a court to prevent this inequity by assessing
24  attorney's fees against the entire fund, thus spreading fees proportionateley among
25  those benefitted by the suit." *Id.*

26       Thus, the common fund doctrine ensures that each member of the settlement
27  class contributes proportionately to the payment of the attorneys' fees recovered
28  from monetary payments that the prevailing party recovered in the lawsuit.  "Put

another way, in common fund cases, a variant of the usual rule applies and the winning party pays his or her own attorneys' fees; in fee-shifting cases, the usual rule is rejected and the losing party covers the bill." *Stanton v. Boeing* (9th Cir. 2003) 327 F.3d 938, 967, citing *Wininger v. SI Mgmt. L.P.* (9th Cir. 2002) 301 F.3d 1115.

The common fund doctrine is predicated on the principle of preventing unjust enrichment. When a litigant's efforts create or preserve a fund from which others derive benefits, the court may spread litigation costs proportionately among all the beneficiaries to compensate those who created the fund. Further, the *Rutter Group California Practice Guide: Civil Trials and Evidence* acknowledges the applicability of the common fund doctrine and describes it as follows: "When the lawsuit results in the recovery of a fund or property benefitting others as well as the plaintiff (e.g., a class action), the court has inherent equitable power to order Plaintiff's attorney's fees paid out of the common fund or property." *See* <u>Serrano</u>, *supra,* 20 Cal.3d at 35 and *Laffitte, supra,* 1 Cal.5th 480.

Such "fee spreading" assures that all those benefitted by the litigation pay their fair share of obtaining the recovery. *Lealao v. Beneficial Calif., Inc.* (2000) 82 Cal.App.4th 19, 26 ("Percentage fees have traditionally been allowed in such common fund cases." California Supreme Court has long approved of awarding fees as a percentage of the settlement. *Laffitte, supra,* 1 Cal.5th 480; *Serrano, supra,* 20 Cal.3d at 35 discussed percentage fee awards, has never been overturned, and remains good law.

Since *Serrano*, there has been a "groundswell of support for mandating the percentage-of-the-fund approach in common fund cases." *Id. Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, recently discussed the common fund doctrine developed by the Supreme Court: "The common fund doctrine, frequently applied in class actions when the efforts of the attorney for the named class representatives produce monetary benefits for the entire

1   class, to allow a party preserving or recovering a fund for the benefit of others in

2   addition to himself, to recover his costs, including his attorneys' fees, from the fund

3   or the property itself or directly from other parties enjoying the benefit." *Id* at 397.

4   Under these principles, a percentage of the common fund fee award is proper based

5   on the Gross Settlement Amount of $1,380,000.

6          For Class Counsel, the fees here were wholly contingent in nature and the

7   case presented far more risk that the usual contingent fee case.  There was the

8   prospect of the enormous cost inherent in class action litigation, as well as a long

9   battle with a corporate Defendant.  That prospect has previously become reality, in

10  both trial courts and appellate courts in other wage and hour class litigation.  Class

11  Counsel risked not only a great deal of time, but also a great deal of expense to

12  ensure the successful litigation of this Action on behalf of all Class Members.

13  Based upon the foregoing, Class Counsel respectfully requests that the Court award

14  attorneys' fees in the amount of $460,000 and litigations costs in the amount of

15  $14,438.49.

16         **A.     An Award of Attorneys' Fees as Requested is Appropriate Under**

17                 **The Lodestar Method.**

18         Under either theory of awarding fees, the case that should govern the court's

19  decision is *Lealao*, *supra*, 82 Cal.App.4th 19.  *Lealao* stands for the proposition that

20  the court-awarded attorneys' fees should approximate what counsel could get on the

21  free market for the same services. *Id* at 50.  Specifically, *Lealao* holds that if the

22  Court sets fees under a lodestar, the multiplier should consider what counsel would

23  have earned on the free market.  The free market is determined by the percentage of

24  the common fund, not the lodestar amount. *Id*. Accordingly, whatever method this

25  Court uses to set fees, the Court should look to what the free market would

26  bear under any circumstances.  Even if the court awards fees under the lodestar

27  method, under *Lealao*, the lodestar fees should be adjusted by a multiplier to reflect

28  the percentage of the fund. *Id* at 19 and 50.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Here, Class Counsel earned the requested fee, as this case was vigorously
2 litigated.  At least approximately 464 hours will have been expended by The
3 Nourmand Law Firm, APC.  The issue in this motion is not why the Court should
4 award a fee commensurate with one-third of the fund, but why the Court should not
5 award such a fee.  The Settlement comes after productive litigation, all the while
6 when the viability of wage and hour class actions continue to be questioned.  These
7 facts, as well as others discussed below, warrant approval of the requested fee.

8    Under the lodestar method, a base fee amount is calculated from a
9 compilation of time reasonably spent on the case and the reasonable hourly
10 compensation of the attorney.  The base amount is then adjusted in light of various
11 factors.  *Serrano, supra*, 20 Cal 3d at 48.

12    To summarize Class Counsel's lodestar request, Class Counsel will have
13 worked approximately 464 hours on this case.  Class Counsel's hourly rate in this
14 case for Michael Nourmand is $975 per hour; James A. De Sario is $675 per hour;
15 Paralegal is $150.00 per hour; and Legal Assistants is $100.00 per hour.  At Class
16 Counsel's hourly rate, this results in a total lodestar amount of $366,900 (306 x
17 $975 = $298,350; 88 x $675 = $59,400; 43 x $150 = $6,450; and 27 x $100 =
18 $2,700).

19    **B.    Class Counsel's Hourly Rate**

20    Class Counsel's hourly rate is $975 and $675.  At this requested rate, this
21 results in a total lodestar amount of $366,900.  A reasonable hourly rate is the
22 prevailing rate charged by attorneys of similar skill and experience in the relevant
23 community. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084, 1095.  The Court
24 may consider other factors when determining a reasonable hourly rate, *e.g.*, the
25 attorney's skill and experience, the nature of the work performed, the relevant area
26 of expertise and the attorney's customary billing rates.  *Flannery v. California
27 Highway Patrol* (1998) 61 Cal. App. 4th 629,632.

28 ///

1     One difficulty in determining the hourly rate of attorneys of similar skill and

2 experience in the relevant community is the scarcity of hourly fee paying clients in

3 class action litigation. As a practical matter, few if any consumers pay attorneys'

4 fees on an hourly basis for such extensive litigation, and thus retainer agreements in

5 such cases are based on a contingency fee relationship. Although there is no

6 customary billing rate, the nature of class action work should be strongly considered

7 by the court. Courts have upheld rates as high as $450 per hour (in 1993) in

8 employment matters. *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal. App.

9 4th 976, *overruled on other grounds*.

10     A survey conducted by the National Law Journal for the year 2002 provides a

11 sample of a billing rate for California Lawyers. In that survey, six California firms

12 provided their hourly billing rates. Of those six firms, five regularly charge in

13 excess of $500.00 per hour for their partners. In fact, four of the firms charge as

14 high as $600.00, $620.00, $650.00, and up to $850.00 per hour. These firms are

15 located in Orange County, Los Angeles County, San Francisco County and San

16 Diego County and are the types of firms that Plaintiffs' counsel regularly opposes in

17 these class action cases. (See the National Law Journal Survey attached as Exhibit

18 "2" to Nourmand Decl.). The only difference is that these defense attorneys are

19 paid on a monthly basis and do not have to advance any costs on a case.

20     Finally, Class Counsel attached the Declaration of Richard Pearl in support of

21 the Motion for Final Approval in the case of *Rosa Cantu, et al v. Pacific Bell*

22 *Telephone Company*, Case No. BC441237, dated January 4, 2011. (See Declaration

23 Richard Pearl attached as Exhibit "3" to Nourmand Decl.). Mr. Pearl specializes in

24 issues related to cost-award attorney's fees, including the representation of Parties

25 in fee litigation and appeals, serving as an expert witness and serving as a mediator

26 and arbitrator in disputes concerning attorney's fees and related issues. Mr. Pearl is

27 also the author of California Attorney's Fee Awards (3d ed Cal. CEB 2010), as well

28 as the author of the Second Edition, years 1994 through 2008. He has also authored

1  numerous other publications on attorney's fees, as set forth in his Declaration. (*Id.*
2  at ¶¶4-5).

3       Mr. Pearl has reviewed the comparable hourly rates of attorney fees in
4  California.  He confirms that courts have approved hourly rates of attorneys as
5  follows.

6      ●    Rates of up to $875.00 in *Savaglio, et al. v. Wal-Mart*, Alameda
7          County Superior Court, Case No. C-835687-7 (before applying a 2.36
8          multiplier);

9      ●    Rates of up to $750.00 in *Kashmiri et al. v. Regents of UC*, San
10          Francisco County Superior Court (before applying a 3.7 multiplier);
11          and

12      ●    Rates of up to $750.00 in *Environmental Law Foundation v. Laidlaw
13          Transit, Inc.*, San Francisco Superior Court, Case No. CGC-06-451832
14          (before applying a 1.25 multiplier).  *Id* at Pages 4 and 5.

15       Additionally, Mr. Pearl has reviewed numerous declarations, depositions and
16  surveys of legal rates on a non-contingent basis for the year 2009 and found hourly
17  rates of up to $775.00, $795.00, $800.00, $855.00, $950.00, etc. (*Id.* at pages 6-12).
18  These are non-contingent rates where payment in full is expected promptly upon
19  billing. (*Id.* at page 13).  These rates indicate that the requested hourly rate, as well
20  as the multiplier, is reasonable in the case-at-hand in view of Class Counsel's
21  experience, the result achieved in this case and the contingent nature of the fees in
22  class action cases.

23       In sum, the requested attorneys' fees are reasonable.  It required an attorney
24  with great skills and financial backing as it involved a highly specialized area of
25  employment law that requires skilled and experienced attorneys.  To obtain such an
26  attorney on the free market, a client must pay appropriate compensation.  Therefore,
27  Class Counsel's requested rate is fair and reasonable.
28  ///

- 23 -

C.    **Class Counsel's Hours Spent on the Case**

Class Counsel will spend approximately 464 hours litigating this case and bringing it to fruition. This includes what Class Counsel collectively expects to expend in administering the Settlement including preparation for and attending the final approval hearing. Thus, Class Counsel requests that the Court find that these hours are reasonable in this litigation.

The courts are quite liberal in the evidence required to prove an attorney's hours. Detailed time records are not required. An attorney's testimony alone may suffice. "Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records. *Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559; *Bellinghausen v. Tractor Supply Company* (N.D. Cal.2016) 306 F.R.D. 245, 264.

Reasonable hours include, in addition to time spent during litigation, the time sent before the action is filed, including time spent interviewing the clients, investigation of the facts and the law, and preparing the initial pleadings. *New York Gaslight Club, Inc. v. Carey* (1980) 447 U.S. 54, 62. Further, the fee award should include fees incurred to establish and defend the attorney's fee claim. *Serrano v. Priest* (1982) 32 Cal. 3d 621, 639.

D.    **A Multiplier of The Lodestar Should Be Awarded To Account For**
      **The Successful Result, The Contingency Risk of Litigation And**
      **The Percentage of Fees Class Counsel Would Have Received On**
      **The Free Market**

Once the Court establishes the lodestar amount, it may enhance the fee award by a multiplier in order to make an appropriate fee award. *Serrano*, 20 Cal.3d at 48. The pertinent factors include the difficulty of the questions involved and the skill in presenting them, the contingent nature of the fee award, the extent to which the litigation precluded other employment, and the percentage-of-the-fund the attorney would have received on the fair market. *Id.* However, this list is not exhaustive and

- 24 -

1  the Court can consider other factors it deems important in setting the multiplier. *Id*
2  at 40.  A limitation in setting the multiplier is that the court cannot duplicate factors
3  already included in the lodestar. *Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1139.

4      In applying the multiplier, *Newberg on Class Actions* states that "[m]ultipliers
5  ranging from one to four frequently are awarded in common fund cases when the
6  lodestar method is applied.  A large common fund award may warrant an even
7  larger multiplier." *Newberg on Class Actions* Vol. 3, §14.03, p. 14-5, Dec. 1992.
8  Applying these factors to the instant action demonstrates that Class Counsel should
9  be awarded fees based upon a multiplier of approximately 1.26.

10      **1.    The Court Should Increase The Multiplier Based On A
11          Percentage-Of-The-Fund To Ensure That The Fee Awarded
            Is Within The Range of Fees Freely Negotiated In The Legal
12          Marketplace In Comparable Litigation**

13      If the members of the settlement class paid the fees that the market would
14  bear, they would pay a fee of 1/3- 50% of any recovery.  Since this is the market
15  rate, *Lealao* indicates that the fee should be enhanced to reflect what the members
16  of the settlement class would pay on the open market.  *Lealao* held a trial court
17  should award lodestar fees by examining the percentage-of-the-benefit and
18  adjusting the lodestar calculation accordingly. *Id* at 49, 53.  *Lealao* indicated that
19  this is an upward adjustment and should be akin to a contingency fee recovery; the
20  court stated, "an adjustment reflecting the amount of the Class recovery is not
21  significantly different from an adjustment reflecting a percentage of that amount,
22  and California courts have evaluated a lodestar as a percentage of the benefit." *Id* at
23  46.  The *Lealao* method appears particularly appropriate because class actions
24  generally are contingency fee cases for plaintiffs and the class action clients do not
25  expect to pay an hourly fee.

26      The rationale of *Lealao* comports with the purpose of the multiplier.  The
27  multiplier is "primarily to compensate the attorney for the prevailing party at a rate
28  reflecting the risk of nonpayment in contingency cases[.]" *Ketchum v. Moses*, *supra*

- 25 -

24 Cal. 4th 1122, 1138. *Lealao* reasons likewise that "the law should mimic the market":

> Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class and derivative actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for Defendants to increase injurious behavior. [Citations]. It has therefore been urged (most persistently by Judge Richard Posner) that in defining a "reasonable fee" in such representative actions the law should 'mimic the market.' [Citations].
>
> 'In the class action context, that would mean attempting to award the fee that informed private bargaining, if it were truly possible, might have reached. The simplest way for the law to duplicate the bargain that informed parties would reach if urgency costs were low is to look to fee award levels in actions brought by sophisticated private parties under the same or comparable statutes." *Lealao*, supra, 82 Cal. App. 4th at 47-48.

### 2. An Enhancement Based On A Percentage of The Fund Is Justified Based On Factors Stated in *Lealao*.

*Lealao* contains several factors justifying an enhancement based on the percentage-of-the-benefit, and lack of objections by Class Members and commendable conduct by counsel. *Id* at 51. These factors are present in this case. As in *Lealao*, members of the settlement class were notified of the Settlement and attorneys' fees and no members of the settlement class objected to the Settlement and request for attorneys' fees.

Prompt settlement *cannot* be used to diminish the fee or the enhancement based on a percentage-of-the-fund. *Lealao* 82 Cal.App.4th at 52-[the promptness of settlement "cannot be used to justify the refusal to apply a multiplier[.]" According to *Lealao*, the California Supreme Court has placed "an extraordinarily high value"

- 26 -

1  on settlement, and counsel should be rewarded, not punished, for achieving this

2  goal. *Id.*

### 3. The Difficulty of The Questions Involved And The Skill in Presenting Them.

Class Counsel used a high level of skill in addressing the difficult questions presented in this case, which involved the hotly debated issues of meal periods, rest breaks, and rounding practices. The proof of Class Counsel's skill in this area of the law lies in the size of the settlement and the recoveries of individual members of the settlement class. "The recovery in this case is thus a more authentic indication of the value of counsel's contribution than might otherwise be true." *Id.* at 53. Thus, the multiplier should be enhanced by the difficulty of the questions involved and the skill in presenting them.

### 4. Contingent Risk of Litigation

The multiplier should be enhanced by the contingent nature of counsel's fee recovery. The risks of a class action cases are enormous. Litigating a wage and hour class action through trial takes years and requires the investment of thousands of dollars. Litigation costs in the present case for The Nourmand Law Firm, APC are $14,438.49. Attorneys willing to undertake this risk deserve a high rate.

Second, wage and hour laws are still developing, and change in the law always threaten to wipe out the plaintiff's attorney. In fact, during the pendency of this case, numerous appellate decisions have attacked the validity of class action wage and hour cases directly relevant to this case, which could have significantly affected its value. It is this contingent nature of these cases that justify an award when and if plaintiff's counsel is able to obtain a settlement or verdict, because often times no money is recovered in a case, including plaintiff's counsel's costs, let alone their time.

///

///

1

### 5.     This Litigation Precluded Other Employment

2     A practice can only properly litigate so many cases at one time.  The
3 requirements of this were significant, requiring approximately 464 hours of Class
4 Counsel's office time.  Class Counsel was most definitely precluded from other
5 employment.  This case factor should be considered in enhancing the multiplier.

6     **VIII.** <u>**CONCLUSION**</u>

7     The Settlement is fair, adequate and reasonable.  It will result in substantial
8 payments to members of the settlement class and was achieved through extensive,
9 and arms-length negotiations by Class Counsel who are experienced in wage and
10 hour class action litigation.  For the foregoing reasons, Class Counsel and Plaintiffs
11 request that the Court grant final approval of the Settlement and sign the proposed
12 Order and Judgment filed concurrently herewith.

13                          *Respectfully Submitted,*

14 DATED: October 3, 2025          THE NOURMAND LAW FIRM, APC

15

16                   By:    */s/ Michael Nourmand*
17                          Michael Nourmand, Esq.
                            James A. De Sario, Esq.
18                          Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF MICHAEL NOURMAND

# **DECLARATION OF MICHAEL NOURMAND**

I, Michael Nourmand, say and declare, as follows:

1.      I am an attorney at law, duly licensed to practice before all the Courts of the State of California and I am the principal of The Nourmand Law Firm, APC, attorneys of record for plaintiff Gordon Chappelle and Plaintiff Class ("Plaintiffs"). As such, I am familiar with the file in this matter and if called as a witness I could and would competently testify to the following facts of my own personal knowledge.

2.      Plaintiffs and Defendant reached a settlement of the Litigation by agreement upon the terms and conditions and for the consideration set forth in the Settlement Agreement and Release ("Settlement Agreement"), a copy of which is attached hereto as Exhibit "1" excluding the exhibits referenced in the Settlement Agreement.

3.      Having been fully apprised of the Settlement terms, it is now clear that the settlement class overwhelmingly support the Settlement.  The most important fact evidencing the settlement class' support for the Settlement is that *no* Class Member has opted out of the Settlement and *no* Class Member has objected to the Settlement.  Please see Declaration of Lindsay Romo, paragraphs 12 and 13.

4.      The Settlement is plainly fair, reasonable and adequate in light of the probable outcome of further litigation relating to liability and damages issues.  As this Court knows from the Motion for Preliminary Approval, the Parties were able to reach a Settlement Agreement resolving the disputes in this matter after a hotly contested but professional full-day session of mediation before a well respected mediator in the area of wage and hour class actions, Hon. Amy D. Hogue (Ret.) ("Judge Hogue").  Because the Settlement Agreement was reached at arms-length before a well-respected mediator, the Court can presume, under California law, that it is non-collusive, fair and reasonable.  Each side vigorously advocated for its position, and at the conclusion of mediation, an arms-length settlement was

1

1 | reached.

2 |     5.    In summary, Class Counsel has achieved an excellent result in this
3 | litigation, embodied in the Settlement Agreement.  The proposed class settlement
4 | provides substantial monetary benefits to settlement class members and is a product
5 | of diligent, aggressive and expeditious efforts of Class Counsel to obtain the best
6 | possible result for the settlement class.  A significant number of settlement class
7 | members have shown their support of the Settlement *no* Class Member submitted a
8 | valid request for exclusion and there were *no* objections filed.

9 | **Procedural History of the Case**

10 |     6.    On January 4, 20204, Plaintiff filed a putative wage and hour Class
11 | Action Complaint ("Complaint") with the Los Angeles Superior Court for various
12 | alleged Labor Code violations and Unfair Competition.  On April 2, 2024,
13 | Defendant removed the action to the United States District Court, Central District
14 | of California.

15 |     7.    On April 24, 2024, after meeting and conferring, pursuant to Local
16 | Rule ("LR") 7-3, Plaintiff agreed to file a First Amended Class Action Complaint
17 | ("FAC"), withdrawing his causes of action for meal and rest break and adding a
18 | cause of action for civil penalties under the Private Attorneys' General Act
19 | ("PAGA").  Plaintiff agreed to withdraw the meal and rest break claims based on
20 | case law supporting that these claims are preempted by the Adamson Act, Hours of
21 | Service Act, Federal Railroad Safety Act and Railway Labor Act.  On May 23,
22 | 2024, after another meet and confer, pursuant to LR 7-3, Plaintiff agreed to
23 | withdraw the cause of action for overtime wages due to preemption arguments.
24 | Thereafter, the Parties agreed to proceed with discovery with the following
25 | remaining claims: (1) Failure to Pay Minimum Wages; (2) Failure to Pay All Wages
26 | Upon Termination; (3) Failure to Provide Accurate Wage Statements; (4) Unfair
27 | Competition; and (5) Civil Penalties under PAGA.  The Complaint, FAC and SAC,
28 | as mentioned above, will be referred to as the "Litigation."

8.     After further meet and confer and the California Supreme Court's decision in *Stone v. Alameda Health System* (2024) 16 Cal.5th 1040 in which the court held that public employers are not subject to PAGA penalties and Unfair Competition, Plaintiff agreed to file a Third Amended Class Action Complaint withdrawing the claims under PAGA and Unfair Competition.  The Complaint, FAC, SAC and TAC will be referred to as the "Litigation."

9.     In the Litigation, Plaintiff alleges, *inter alia*, that Defendant failed to pay minimum wages, failure to provide accurate wage statements, and failed to pay wages upon termination as a result of Defendant's uneven rounding practice. Defendant denies each of the allegations asserted in the Litigation, has repeatedly and continues to assert defenses to Plaintiff's claims and contentions, and expressly denies that it engaged in any wrongdoing or has any liability arising out of any of the facts or conduct alleged in the Litigation.

10.     Class Counsel propounded formal written discovery and engaged in informal discovery which yielded information and documentation concerning the claims set forth in the Litigation, such as obtaining time and payroll records for seventy-three class members, Plaintiff's personnel file, applicable policies and procedures related to the claims asserted, Declaration of Jeremy Mileski, who declared that only the employees assigned to the mechanical department used a time keeping system called WMS, total number of class members during the class period, and the average hourly rate.  Furthermore, counsel for the Parties have investigated the law as applied to the facts discovered regarding the alleged claims of Plaintiff and potential defenses thereto, and the potential damages claimed by Plaintiff.

11.     Counsel for the respective Parties engaged in extensive discussions about the strength and weaknesses of the claims and defenses.  Plaintiff and Defendant undertook extensive mediation efforts with Judge Hogue on August 27, 2024.  The Parties were not able to reach a settlement at mediation.  Judge Hogue

DECLARATION OF MICHAEL NOURMAND

continued settlement discussions with counsel which resulted in her issuing a mediator's proposal, which the Parties ultimately accepted.

12.    The Parties concluded that there were benefits associated with settling the Litigation.  Specifically, the Parties concluded, after taking into account the sharply disputed factual and legal issues involved in this Litigation, the risks attending further prosecution, and the substantial benefits to be received pursuant to the compromise and settlement of the Litigation as set forth in this Settlement Agreement, that settlement on the terms set forth herein is in the best interest of Plaintiff, the proposed class, and Defendant, and is fair and reasonable.

## Class Counsel Are Experienced Class Litigators

13.    I graduated from UCLA with a B.A. in Political Science (Cum Laude) in 1994. Thereafter I attended Loyal Law school and graduated in May of 1998.  I became a member of the California State Bar in December 1998.  In September 1999, I along with my former business partner Bruce Kokozian, started the law firm of Kokozian & Nourmand LLP and began to represent plaintiffs in the area of personal injury, insurance bad-faith, employment law, wage and hour, and class actions.  In June 2010, I dissolved my partnership at Kokozian & Nourmand LLP and started The Nourmand Law Firm, APC exclusively representing plaintiffs in the areas of employment law, wage and hour, and class actions.  Prior to starting my own law firm, I worked for a plaintiff's law firm, Rose, Klein & Marias, Law Offices of Gary Bostwick and externed at the U.S. Attorney's Office, Civil Fraud Division and U.S. Bankruptcy Court, Honorable Judge Barry Russell.   I am admitted to practice in all state courts in California, the United States District Courts of California - Central District, Southern District, Northern District, Estern District and the United States Supreme Court.  In July 2011 I was selected as one of 75 Top Labor & Employment Lawyers in California by the Daily Journal; in 2011 and 2012 I was selected as a Rising Star by Super Lawyers and in 2013-2024 I was selected as a Super Lawyer by Super Lawyers.  I am also an active member of the

DECLARATION OF MICHAEL NOURMAND

California Employment Lawyer's Association ("CELA"), Consumer Attorneys of
California ("CAOC"), National Employment Lawyer's Association ("NELA"),
Consumer Attorneys Association of Los Angeles ("CAALA"), California State Bar,
Labor and Employment Section, and the Los Angeles County Bar.

14.    My associate James A. De Sario graduated from UCI with a B.A. in
Political Science in 1998. Thereafter he attended University of West Los Angeles
School of Law and graduated in 2006. Mr. De Sario became a member of the
California State Bar in March 2009. In February 2009 Mr. De Sario became an
associate at Kokozian & Nourmand LLP and thereafter in June 2010 Mr. De Sario
became a senior associate at The Nourmand Law Firm, APC. Mr. De Sario
exclusively represented employees in the area of employment law, wage and hour
litigation on an individual and class wide basis. Mr. De Sario is admitted to
practice in all state courts in California, the United States District Courts of
California - Central District, Eastern District, Southern District, Northern District
and Ninth Circuit Court of Appeal. Mr. De Sario is also an active member of the
California Employment Lawyer's Association ("CELA").

15.    Class Counsel are respected members of the California Bar with strong
records of vigorous and effective advocacy of their clients, and they are
experienced in handling complex class action litigation. Both Class Counsel and
Plaintiff were prepared to litigate the claims in this Action, but they strongly and
unequivocally support the proposed Settlement as being in the best interest of the
settlement class based on the circumstances referenced herein.

16.    Class Counsel is experienced in wage and hour class action litigation.
The Nourmand Law Firm, APC is acting as lead counsel in over twenty other wage
and hour class actions. Class Counsel has been appointed class counsel on several
wage and hour class actions and one FACTA class action. Thus, Class Counsel is
sufficiently experienced and qualified to evaluate the Class Members' claims and
viability of Defendant's defenses.

17.    In the opinion of Class Counsel, the recovery for each class member is well within the acceptable range for this type of action.  This Settlement is also favorable given that settlement class will promptly receive compensation rather than facing uncertainties inherent in further litigation and waiting for years for this action to be tried.  It is also telling that the settlement class have overwhelmingly supported the Settlement on the terms set forth in the Settlement Agreement.  Based on all considerations, this Settlement is highly favorable and is in the best interest of the settlement class.

### There Were No Objections and No Valid Opt-Outs.

18.    In sum, all relevant factors support final approval of the Settlement.  The Parties negotiated at arm's-length and in good faith under the supervision of an experienced and well-respected mediator.  Class Counsel also engaged in extensive investigation, discovery, and analysis of class claims.  Moreover, Class Counsel, who are experienced class action litigators, strongly believe that this Settlement provides an excellent result to the settlement class.  Lastly, the fact that there were no objections filed and no valid opt-out militates strongly in favor of approval of the Settlement.  For the foregoing reasons, this Court should conclude that under the circumstances of this case, the proposed Settlement is fair, adequate, and well within the range of reasonableness.

### The Payment To The Settlement Administrator Is Reasonable

19.    The Settlement Administrator has fulfilled its duty to prepare and send the Notice to all settlement class members, in English and Spanish.  Moreover, the Settlement Administrator has also fulfilled its duty to provide a report detailing the following: (1) total number of members of the settlement class who were sent the notice; (2) total number of members of the settlement slass who timely requested to opt-out from the Settlement; and (3) total number of members of the settlement class who submitted timely objections to the Settlement.  See Declaration of Lindsay Romo, regarding Settlement Administration, served herewith.  The

1 Settlement Administrator has stated that a fee of $9,000 is the total cost of
2 administration of the Settlement, which is fair and reasonable. Plaintiffs and Class
3 Counsel request that the Court approve payment of the final total cost of
4 administration to Simpluris, Inc., to be deducted from the Gross Settlement
5 Amount.

**The Named Plaintiff Should Be Awarded**
**The Requested Enhancement Payment**

8   20. Plaintiff, Gordon Chappelle and Class Counsel request that the Court
9 finally approve an enhancement payment of $10,000 to the named plaintiff for the
10 time, effort, and the risks he undertook in participating in this Litigation. Because a
11 named plaintiff is an essential ingredient of any class action, an enhancement award
12 is appropriate to induce individuals to step forward and assume the burdens and
13 obligations of representing the class. In deciding the amount of an enhancement
14 award for a class representative, relevant factors include the actions the plaintiff has
15 taken to protect the interests of the class, the degree to which the class has
16 benefitted from those actions, and the amount of time and effort the plaintiff
17 expended in pursuing the litigation.

18   21. In the instant case, the named plaintiff assisted Class Counsel on many
19 occasions with the investigation and prosecution of this action. Plaintiff
20 contributed many documents to Class Counsel, made himself available for a full
21 day mediation. The amount sought for the class representative is in line with the
22 enhancement awards in similar wage and hour class actions. Further, Defendant
23 agreed to the requested award of $10,000 to the named plaintiff, Gordon Chappelle.
24 As such, the enhancement payment requested is intended to compensate Plaintiff
25 for the critical role he played in this case and the substantial time, efforts, and risks
26 he undertook to help secure the result obtained on behalf of the settlement class is
27 well deserved and warranted. Furthermore, Plaintiff has provided Defendant a
28 general release of his claims in exchange for the enhancement payment.

7

### The Requested Attorneys' Fees and Costs
### are Fair, Reasonable, and Appropriate

22.     Class Counsels' application for an award of attorneys' fees in an amount of approximately one-third of the settlement value created on behalf of the settlement class is reasonable and fair.  The requested fee falls on the lower end of the Ninth Circuit's historical benchmark for attorneys' fees of 20% to 50% of a common fund and is fair compensation for undertaking complex, risky, expensive, and time-consuming litigation on a contingent basis.

23.     For Class Counsel, the fees here were wholly contingent in nature and the case presented far more risk that the usual contingent fee case.  There was the prospect of the enormous cost inherent in class action litigation, as well as a long battle with a corporate Defendant.  That prospect has previously become reality, in both trial courts and appellate courts in other wage and hour class litigation.  Class Counsel risked not only a great deal of time, but also a great deal of expense to ensure the successful litigation of this Action on behalf of all Class Members.  Based upon the foregoing, Class Counsel respectfully requests that the Court award attorneys' fees in the amount of $460,000 and litigations costs in the amount of $14,438.49.

24.     The Nourmand Law Firm, APC will have worked approximately 464 hours on this case. Class Counsel's hourly rate in this case for Michael Nourmand is $975 per hour; James A. De Sario is $675 per hour; Paralegal is $150.00 per hour; and Legal Assistants is $100.00 per hour.  At Class Counsel's hourly rate, this results in a total lodestar amount of $366,900 (306 x $975 = $298,350; 88 x $675 = $59,400; 43 x $150 = $6,450; and 27 x $100 = $2,700).

25.     A survey conducted by the National Law Journal for the year 2002 provides a sample of a billing rate for California Lawyers.  In that survey, six California firms provided their hourly billing rates.  Of those six firms, five regularly charge in excess of $500.00 per hour for their partners.  In fact, four of the

8

firms charge as high as $600.00, $620.00, $650.00, and up to $850.00 per hour. These firms are located in Orange County, Los Angeles County, San Francisco County and San Diego County and are the types of firms that Plaintiffs' counsel regularly opposes in these class action cases. (See the National Law Journal Survey attached as Exhibit "2" to Nourmand Decl.). The only difference is that these defense attorneys are paid on a monthly basis and do not have to advance any costs on a case.

26.    Finally, Class Counsel attached the Declaration of Richard Pearl in support of the Motion for Final Approval in the case of *Rosa Cantu, et al v. Pacific Bell Telephone Company*, Case No. BC441237, dated January 4, 2011. (See Declaration Richard Pearl attached as Exhibit "3"to Nourmand Decl.). Mr. Pearl specializes in issues related to cost-award attorney's fees, including the representation of Parties in fee litigation and appeals, serving as an expert witness and serving as a mediator and arbitrator in disputes concerning attorney's fees and related issues. Mr. Pearl is also the author of California Attorney's Fee Awards (3d ed Cal. CEB 2010), as well as the author of the Second Edition, years 1994 through 2008. He has also authored numerous other publications on attorney's fees, as set forth in his Declaration. (*Id.* at ¶¶4-5).

27.    Mr. Pearl has reviewed the comparable hourly rates of attorney fees in California. He confirms that courts have approved hourly rates of attorneys as follows.

- Rates of up to $875.00 in *Savaglio, et al. v. Wal-Mart*, Alameda County Superior Court, Case No. C-835687-7 (before applying a 2.36 multiplier);
- Rates of up to $750.00 in *Kashmiri et al. v. Regents of UC*, San Francisco County Superior Court (before applying a 3.7 multiplier); and

///

DECLARATION OF MICHAEL NOURMAND

- Rates of up to $750.00 in *Environmental Law Foundation v. Laidlaw Transit, Inc.*, San Francisco Superior Court, Case No. CGC-06-451832 (before applying a 1.25 multiplier). *Id* at Pages 4 and 5.

28.   Additionally, Mr. Pearl has reviewed numerous declarations, depositions and surveys of legal rates on a non-contingent basis for the year 2009 and found hourly rates of up to $775.00, $795.00, $800.00, $855.00, $950.00, etc. (*Id.* at pages 6-12). These are non-contingent rates where payment in full is expected promptly upon billing. (*Id.* at page 13). These rates indicate that the requested hourly rate, as well as the multiplier, is reasonable in the case-at-hand in view of Class Counsel's experience, the result achieved in this case and the contingent nature of the fees in class action cases.

29.   The following are the itemized litigation costs for the above-referenced matter:

|     |                          |    |           |
|-----|--------------------------|----|-----------|
| (1) | Filing Fees              | $  | 1,510.00  |
| (2) | Mediation                | $  | 7,995.00  |
| (3) | Professional Services    | $  | 4,615.00  |
| (4) | e-Filling Fees           | $  | 103.26    |
| (5) | Messenger                | $  | 54.17     |
| (6) | Photocopies (553 x .20)  | $  | 110.60    |
| (7) | Postage                  | $  | 50.46     |
|     | Total                    | $14,438.49 |  |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct this 3rd day of October 2025, at Beverly Hills, California.

_/s/ Michael Nourmand_____
Michael Nourmand

# EXHIBIT "1"

## SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement ("Settlement Agreement") is made by and between Plaintiff Gordon Chappelle ("Plaintiff") and Defendant National Railroad Passenger Corporation dba Amtrak ("Defendant") in connection with the case defined as: *Gordon Chappelle v. National Railroad Passenger Corporation*, filed in the Superior Court of the State of California, County of Los Angeles, Case No. 24STCV00286, and later removed to the U.S. District Court for the Central District of California (Western Division, Los Angeles), Case No. 2:24-cv-02667-JFW-MRW. Plaintiff and Defendant are collectively referred to herein as "Parties," or individually as "Party."

## I. DEFINITIONS.

1.1.   "Action" means the Plaintiff's lawsuit alleging wage and hour violations against Defendant National Railroad Passenger Corporation, captioned *Gordon Chappelle v. National Railroad Passenger Corporation*, initiated on January 4, 2024 in the Superior Court of the State of California, County of Los Angeles, Case No. 24STCV00286, and later removed to the U.S. District Court for the Central District of California (Western Division, Los Angeles), Case No. 2:24-cv-02667-JFW-MRW, where it is pending.

1.2.   "Administrator" means Simpluris, Inc., the neutral entity the Parties have agreed to appoint to administer the Settlement.

1.3.   "Administration Expenses Payment" means the amount the Administrator will be paid from the Gross Settlement Amount to reimburse its reasonable fees and expenses in accordance with the Administrator's "not to exceed" $9,000 bid submitted to the Court in connection with Preliminary Approval of the Settlement.

1.4.   "Class" means all persons employed by Defendant in California and classified as non-exempt Mechanical employees during the Class Period.

1.5.   "Class Counsel" means Michael Nourmand and James A. De Sario of The Nourmand Law Firm, APC.

1.6.   "Class Counsel Fees Payment" and "Class Counsel Litigation Expenses Payment" mean the amounts allocated to Class Counsel for reimbursement of reasonable attorneys' fees and expenses, respectively, incurred to prosecute the Action.

1.7.   "Class Data" means Class Member identifying information in Defendant's possession including the Class Member's name, last-known mailing address, Social Security number, and number of Class Period Workweeks and/or dates of employment.

1.8.   "Class Member" or "Settlement Class Member" means a member of the Class, as either a Participating Class Member or Non-Participating Class Member.

1.9.   "Class Member Address Search" means the Administrator's investigation and search

for current Class Member mailing addresses using all reasonably available sources, methods and means including, but not limited to, the National Change of Address database, skip traces through Accurint or similar program, and direct contact by the Administrator with Class Members.

1.10.    "Class Notice" means the COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL, to be mailed to Class Members in English and Spanish translation in the form, without material variation, attached as Exhibit A and incorporated by reference into this Agreement.

1.11.    "Class Period" means the period from January 4, 2021 through the date when the total workweeks reaches 73,585 workweeks.

1.12.    "Class Representative" means Plaintiff Gordon Chappelle.

1.13.    "Class Representative Service Payment" means the payment to the Class Representative for initiating the Action and providing services in support of the Action. The Parties agree that the Class Representative will request a Service Payment not to exceed Ten Thousand Dollars ($10,000), which is to be paid out of the Gross Settlement Amount. The Parties further agree that Plaintiff Chappelle's release under the Settlement will include a full general release with California Civil Code section 1542 waiver, in exchange for the class Representative Service Payment.

1.14.    "Court" means the U.S. District Court for the Central District of California (Western Division, Los Angeles).

1.15.    "Defendant" means named Defendant National Passenger Railroad Corporation dba Amtrak ("Amtrak").

1.16.    "Defense Counsel" means Shahram Samie and Atticus Lee of Littler Mendelson P.C.

1.17.    "Effective Date" means the first business day after the date when all of the following have occurred: (a) this Settlement Agreement has been executed by all Parties and by Class Counsel and Defense Counsel; (b) the Court has given preliminary approval to the Class Settlement; (c) notice has been given to the Settlement Class providing them with an opportunity to request exclusion, dispute number of workweeks or object to the Class Settlement; (d) the Court has held a Final Approval and Fairness Hearing and entered a final order and judgment certifying the Settlement Class and approving this Settlement Agreement; and (e) the later of the following events: (1) the expiration of the period for filing any appeal, writ, or other appellate proceeding related to the Settlement, including any appeal involving the amount of attorneys' fees and costs awarded to Class Counsel, has elapsed without any appeal, writ, or other appellate proceeding having been filed, i.e., thirty (30) days from the date of entry of the judgment; (2) the dismissal of any appeal, writ, or other appellate proceeding related to the Settlement, including any appeal involving the amount of

attorneys' fees and costs awarded to Class Counsel, with no right to pursue further
remedies or relief; or (3) any appeal, writ, or the issues of such other final appellate
order upholding the Court's final order with no right to pursue further remedies or
relief. In this regard, it is the intention of the Parties that the Class Settlement shall
not become effective until the Court's order approving the Class Settlement is
completely final and there is no further recourse by an appellant or objector who
seeks to contest the Class Settlement.

1.18.    "Gross Settlement Amount" means One Million and Two Hundred Thousand
Dollars and Zero Cents ($1,200,000.00), to be paid by the Defendant in full
settlement of the Release Claims asserted in the Action, inclusive of the Individual
Class Payments, Class Counsel Fees and Expenses, the Administrator's Expenses,
and the Class Representative Service Payment. Defendant shall separately pay its
share of the Employer's Taxes in addition to the Gross Settlement Amount on the
portion of each Individual Settlement Amount allocated as wages, except as
provided in Paragraph 7 below.

1.19.    "Individual Class Payment" means the Participating Class Member's pro rata share
of the Net Settlement Amount calculated according to the number of Workweeks
worked during the Class Period.

1.20.    "Judgment" means the judgment entered by the Court based upon the Final
Approval.

1.21.    "Net Settlement Amount" means the Gross Settlement Amount, less the following
payments in the amounts approved by the Court: Class Representative Service
Payment, Class Counsel Fees and Expenses Payment, and the Administrator's
Expenses Payment. The remainder is to be paid to Participating Class Members as
Individual Class Payments.

1.22.    "Non-Participating Class Member" means any Class Member who opts out of the
Settlement by sending the Administrator a valid and timely Request for Exclusion.

1.23.    "Participating Class Member" means a Class Member who does not submit a valid
and timely Request for Exclusion from the Settlement.

1.24.    "Preliminary Approval" means the Court's Order Granting Preliminary Approval of
the Settlement."

1.25.    "Preliminary Approval Order" means the proposed Order Granting Preliminary
Approval of the Class Settlement.

1.26.    "Final Approval" means the Court's order granting final approval of the Settlement.

1.27.    "Final Approval Hearing" means the Court's final hearing held to ascertain the
fairness, reasonableness, and adequacy of the Class Settlement and Motion for Final
Approval of the Settlement.

1.28.   "Final Judgment" means the Judgment Entered by the Court upon Granting Final Approval of the Settlement.

1.29.   "Released Class Claims" means the claims being released as described in Paragraph 5.2 below.

1.30.   "Released Parties" means: Defendant National Railroad Passenger Corporation and each of its former and present directors, officers, shareholders, owners, members, attorneys, insurers, predecessors, successors, assigns, subsidiaries, and affiliates.

1.31.   "Request for Exclusion" means a Class Member's submission of a written request to be excluded from the Class Settlement signed by the Class Member.

1.32.   "Response Deadline" means 45 days after the Administrator mails Notice to Class Members and Aggrieved Employees, and shall be the last date on which Class Members may: (a) fax, email, or mail Requests for Exclusion from the Settlement, or (b) fax, email, or mail his or her Objection to the Settlement. Class Members to whom Notice Packets are resent after having been returned undeliverable to the Administrator shall have an additional 14 calendar days beyond the Response Deadline has expired.

1.33.   "Settlement" means the disposition of the Action effected by this Agreement and the Judgment.

1.34.   "Workweek" means any week during which a Class Member worked for Defendant for at least one day, during the Class Period.

## II. RECITALS.

2.1     On January 4, 2024, Plaintiff commenced this Action by filing a Complaint alleging causes of action against Defendant for (1) failure to pay overtime wages, (2) failure to pay minimum wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to pay all wages upon termination, (6) failure to provide accurate wage statements, and (7) unfair competition under California Business and Professions Code sections 17200-17208, *et seq*. On April 12, 2024, Plaintiff filed a First Amended Complaint whereby Plaintiff, after meet and confer process pursuant to Local Rule 7-3 with Defendant  withdrew  the causes of action for failure to provide meal periods and failure to provide rest periods and added a cause of action for civil penalties pursuant to the Private Attorneys' General Act ("PAGA"). On May 23, 2024, after meet and confer process pursuant to Local Rule 7-3, Plaintiff filed a Second Amended Complaint, withdrawing the causes of action for failure to pay overtime wages. The Second Amended Complaint is the operative complaint in the Action (the "Operative Complaint.") with the following causes of action: failure to pay minimum wage; failure to pay wages upon termination; failure to provide accurate wage statements; unfair competition and PAGA. Defendant denies the allegations in the Operative Complaint, denies any failure to comply with the laws

identified in in the Operative Complaint and denies any and all liability for the causes
of action alleged.

2.2     On August 27, 2024, the Parties participated in an all-day mediation presided over
by Judge Amy Hogue (Ret.), which led to this Agreement to settle the Action.

2.3     Prior to mediation, Plaintiff obtained, through informal discovery, all personnel file
and other documents and data specific to Plaintiff, applicable policies and other
information pertaining to the putative class members, sample timekeeping and
payroll data for the putative class members, as well as key summary data points for
the putative class. Plaintiff's investigation was sufficient to satisfy the criteria for
court approval set forth in *Dunk v. Foot Locker Retail, Inc.* (1996) 48 Cal.App.4th
1794, 1801 and *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129-
130 ("*Dunk/Kullar*").

2.4     Plaintiff has not filed a Motion for Class Certification, and the Court has not granted
class certification.

2.5     The Parties, Class Counsel, and Defense Counsel represent that they are not aware
of any other pending matter or action asserting claims that will be extinguished or
affected by the Settlement.

### III.    MONETARY TERMS.

3.1     <u>Gross Settlement Amount</u>. Except as otherwise provided by Paragraph 7 below,
Defendant agrees to pay One Million and Two Hundred Thousand Dollars and Zero
Cents ($1,200,00.00) and no more as the Gross Settlement Amount. Defendant has no
obligation to pay the Gross Settlement Amount prior to the deadline stated in
Paragraph 4.3 of this Agreement. The Administrator will disburse the entire Gross
Settlement Amount without asking or requiring Participating Class Members to
submit any claim as a condition of payment. None of the Gross Settlement Amount
will revert to Defendant.

3.2     <u>Payments from the Gross Settlement Amount</u>. The Administrator will make and deduct
the following payments from the Gross Settlement Amount, in the amounts specified
by the Court in the Final Approval:

3.2.1   <u>To Plaintiff</u>: Class Representative Service Payment to the Class Representative of not
more than Ten Thousand Dollars ($10,000), in addition to any Individual Class
Payment the Class Representative is entitled to receive as a Participating Class
Member. Defendant will not oppose Plaintiff's request for a Class Representative
Service Payment that does not exceed this amount. As part of the motion for final
approval, Plaintiff will seek Court approval for any Class Representative Service
Payments no later than 28  days prior to the Final Approval Hearing. If the Court
approves a Class Representative Service Payment less than the amount requested, the
Administrator will retain the remainder in the Net Settlement Amount. The amount of
the Class Representative Service Payment is not a material term of this settlement and

denial or reduction of the amount of this Payment is not grounds to void this settlement
or appeal an order on this settlement. The Administrator will pay the Class
Representative Service Payment using IRS Form 1099. Plaintiff assumes full
responsibility and liability for employee taxes owed on the Class Representative
Service Payment.To Class Counsel: A Class Counsel Fees Payment of not more than
one-third which is currently estimated to be $400,000 and a Class Counsel Litigation
Expenses Payment of not more than $20,000. Defendant will not oppose requests for
these payments provided that do not exceed these amounts. Plaintiff and/or Class
Counsel will file a Motion for Final Approval in which they will request for Class
Counsel Fees Payment and Class Litigation Expenses Payment no later than 28 days
prior to the Final Approval Hearing. If the Court approves a Class Counsel Fees
Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts
requested, the Administrator will allocate the remainder to the Net Settlement
Amount. The amount of the Class Counsel Fees Payment and Class Counsel Litigation
Expenses Payment is not a material term of this settlement and denial or reduction of
the amount of this Payment is not grounds to void this settlement or appeal an order
on this settlement. However, Class Counsel retains the right to appeal a reduction of
Class Counsel Fees Payment. In the event Class Counsel does file an appeal in this
regard, Defendant shall not be required to pay the Gross Settlement Amount until the
Effective Date occurs, which includes the resolution of any appeals by Class Counsel
per Section 1.17 herein. Released Parties shall have no liability to Class Counsel or
any other Plaintiff's Counsel arising from any claim to any portion any Class Counsel
Fee Payment and/or Class Counsel Litigation Expenses Payment. The Administrator
will pay the Class Counsel Fees Payment and Class Counsel Expenses Payment using
one or more IRS 1099 Forms. Class Counsel assumes full responsibility and liability
for taxes owed on the Class Counsel Fees Payment and the Class Counsel Litigation
Expenses Payment and holds Defendant harmless, and indemnifies Defendant, from
any dispute or controversy regarding any division or sharing of any of these Payments.

3.2.3    To the Administrator: An Administrator Expenses Payment not to exceed $9,000
except for a showing of good cause and as approved by the Court. To the extent the
Administration Expenses are less or the Court approves payment less than $9,000, the
Administrator will retain the remainder in the Net Settlement Amount.

3.2.4    To Each Participating Class Member: An Individual Class Payment calculated by (a)
dividing the Net Settlement Amount by the total number of Workweeks worked by all
Participating Class Members during the Class Period and (b) multiplying the result by
each Participating Class Member's Workweeks.

3.3      Tax Allocation of Individual Class Payments. The Settlement Administrator will
allocate 34% of each Participating Class Member's Individual Class Payment to the
settlement of wage claims (the "Wage Portion"). The Wage Portions are subject to
tax withholding and will be reported on an IRS W-2 Form. The remaining 66% of
each Participating Class Member's Individual Class Payment will be allocated to
settlement of claims for interest and penalties (the "Non-Wage Portion"). The Non-
Wage Portions are not subject to wage withholdings and will be reported on IRS 1099
Forms. Participating Class Members assume full responsibility and liability for any

employee taxes owed on their Individual Class Payment.

3.4     <u>Effect of Non-Participating Class Members on Calculation of Individual Class Payments.</u> Non-Participating Class Members will not receive any Individual Class Payments. The Administrator will retain amounts equal to their Individual Class Payments in the Net Settlement Amount for distribution to Participating Class Members on a pro rata basis.

3.5     <u>Proportional Increase to Gross Settlement Amount</u>: The Gross Settlement Amount was calculated with, and is premised on, the understanding that there are 73,585 workweeks during the Class Period. If the actual number of workweeks increases to more than 77,000 workweeks then Defendant has the option to either: (1) agree to increase the Gross Settlement Amount on a proportional basis; or (2) elect to end the Class Period on a date when the total workweeks reaches 77,000.

## IV.     SETTLEMENT FUNDING AND PAYMENTS.

4.1     <u>Class Workweeks and Aggrieved Employee Pay Periods</u>. Based on a review of its records to date, Defendant estimates there are 699 Class Members who collectively worked a total of 73,585 Workweeks from January 4, 2021 through August 3, 2024.

4.2     <u>Class Data</u>. Not later than 20 days after the Court grants Preliminary Approval of the Settlement, Defendant will deliver the Class Data to the Administrator, in the form of a Microsoft Excel spreadsheet. To protect Class Members' privacy rights, the Administrator must maintain the Class Data in confidence, use the Class Data only for purposes of this Settlement and for no other purpose, and restrict access to the Class Data to Administrator employees who need access to the Class Data to effect and perform under this Agreement. Defendant has a continuing duty to immediately notify Class Counsel and Defense Counsel if it discovers that the Class Data omitted class member identifying information and to provide corrected or updated Class Data as soon as reasonably feasible. Without any extension of the deadline by which Defendant must send the Class Data to the Administrator, the Parties and their counsel will expeditiously use best efforts, in good faith, to reconstruct or otherwise resolve any issues related to missing or omitted Class Data.

4.3     <u>Funding of Gross Settlement Amount</u>. Defendant shall fully fund the Gross Settlement Amount and also fund the amounts necessary to fully pay Defendant's share of payroll taxes by transmitting the funds to the Administrator no later than 30 days after the Effective Date.

4.4     <u>Payments from the Gross Settlement Amount</u>. Within 7 days after Defendant funds the Gross Settlement Amount and employer's share of payroll taxes, the Administrator will mail checks for all Individual Class Payments, the Administration Expenses Payment, the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment, and the Class Representative Service Payment. Disbursement of the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment and the Class Representative Service Payment shall not precede disbursement of Individual Class Payments.

4.5    The Administrator will issue checks for the Individual Class Payments and send them to the Class Members via First Class U.S. Mail, postage prepaid. The face of each check shall prominently state the date (not less than 180 days after the date of mailing) when the check will be voided. The Administrator will cancel all checks not cashed by the void date. The Administrator will send checks for Individual Settlement Payments to all Participating Class Members (including those for whom Class Notice was returned undelivered). Before mailing any checks, the Settlement Administrator must update the recipients' mailing addresses using the National Change of Address Database. For any check not cashed after 180 calendar days, the Settlement Administrator will send the amount represented by the check to the California State Controller Unclaimed Property, with the identity of the Participating Class Member to whom the funds belong, to be held for the Participating Class Member per California Unclaimed Property Law, in the interest of justice. The money paid to the California State Controller Unclaimed Property will remain the Participating Class Member's property. This will allow Participating Class Member who did not cash their checks to collect their Individual Settlement Amounts at any time in the future. Therefore, there will be no unpaid residue or unclaimed or abandoned class member funds, and the California Code of Civil Procedure section 384 shall not apply. The funds will be held by the State until claimed by the employee and the uncashed check never ceases to be the employee's property.

4.6    The Administrator must conduct a Class Member Address Search for all other Class Members whose checks are retuned undelivered without USPS forwarding address. Within 7 days of receiving a returned check the Administrator must re-mail checks to the USPS forwarding address provided or to an address ascertained through the Class Member Address Search. The Administrator need not take further steps to deliver checks to Class Members whose re-mailed checks are returned as undelivered. The Administrator shall promptly send a replacement check to any Class Member whose original check was lost or misplaced, requested by the Class Member prior to the void date.

4.7    For any Class Member whose Individual Class Payment check is uncashed and cancelled after the void date, the Administrator shall transmit the funds represented by such checks to the California Unclaimed Property Fund in the name of the Class Member who did not cash his/her check with their social security number.

4.8    The payment of Individual Class Payments shall not obligate Defendant to confer any additional benefits or make any additional payments to Class Members (such as 401(k) contributions or bonuses) beyond those specified in this Agreement.

## V.   **RELEASES OF CLAIMS.**

5.1    Effective on the date when Defendant fully funds the entire Gross Settlement Amount and funds all employer payroll taxes owed on the Wage Portion of the Individual Class Payments, Plaintiff and Class Members will release claims against all Released Parties as follows:

5.2    <u>Joint Stipulation for Plaintiff to File Third Amended Complaint to Withdraw PAGA
and Unfair Competition Law Claims</u>. Plaintiff agrees to draft and file a Third Amended
Complaint withdrawing all claims under the Private Attorneys' General Act ("PAGA")
and all claims for unfair competition under Business and Professions Code section
17200, *et seq*., along with the filing of the Motion for Preliminary Approval of the
Settlement. The Parties agree to file a Joint Stipulation and Proposed Order for Plaintiff
to file the Third Amended Complaint.

5.3    <u>Class Release</u>. Qualified Class Members release all claims set forth in the Action that
arose during the Class Period, including but not limited to: failure to pay minimum
wage; failure to pay timely wages at termination; failure to provide accurate itemized
wage statements; those claims predicated on the same or similar facts alleged in the
Third Amended Complaint;  those claims that could have been pled which arise from
the same or similar facts concerning the Plaintiff or the Settlement Class; and those
claims predicated on the same or similar facts and/or claims alleged in the Third
Amended Complaint as well as any claims that could have been pled which arise from
the same or similar facts concerning the Plaintiff or the putative class, and claims for
interest, penalties (including but not limited to waiting time penalties), as well as any
claims under the California Labor Code and California Industrial Welfare Commission
Wage Orders; claims based on the alleged violation of California Labor Code sections
200, 201, 202, 203, 218, 218.5, 218.6, 226, 1182.12, 1194, 1194.2, 1197 and applicable
IWC Wage Orders, and California Code of Regulations, Title 8, section 11000, *et seq*.;
any claims for injunctive relief, declaratory relief, restitution, alleged or which could
have been alleged under the facts, allegations and/or claims released herein;  any and
all other claims under California common law or the federal law alleged in or that could
have been alleged under the same or similar facts, allegations and/or claims released
herein; and all claims for attorneys' fees, attorneys' costs and costs of administering
the settlement other than what's provided under the terms of the settlement.

5.4    <u>Plaintiff's Release</u>. Plaintiff and all persons purporting to act on Plaintiff's behalf or
purporting to assert a claim under or through him shall be deemed to have fully, finally,
and forever released, settled, compromised, relinquished and discharged any and all of
the Released Parties of and from any and all claims, known or unknown, asserted and
unasserted, that he has or may have had against Defendant or any of the other Released
Parties from the beginning of time through the date Plaintiff signs the Settlement
Agreement, including, but not limited to, any claims concerning Plaintiff's
employment and/or the termination of his employment with Defendant, any claims
based on the California Labor Code (including for wages, bonuses, severance pay,
employment benefits, stock options), violation of any personnel policy, any claims
based on discrimination, harassment, unlawful retaliation, violation of public policy,
wrongful termination, or damages of any kind whatsoever, arising out of any common
law torts, contracts, express or implied, any covenant of good faith and fair dealing,
any theory of wrongful discharge, any theory of negligence, any theory of retaliation,
any legal restriction on any affiliated entity's right to terminate the employment
relationship, or any federal, state, local, or other governmental statute, executive order,
regulation or ordinance, or common law, or any other basis whatsoever, to the fullest
extent provided by law ("Plaintiff's Release"). Plaintiff's Release does not extend to

any claims or actions to enforce this Agreement, or to any claims for vested benefits, unemployment benefits, disability benefits, social security benefits, or workers' compensation benefits that arose at any time. Plaintiff acknowledges that Plaintiff may discover facts or law different from, or in addition to, the facts or law that Plaintiff now knows or believes to be true but agrees, nonetheless, that Plaintiff's Release shall be and remain effective in all respects, notwithstanding such different or additional facts or Plaintiff's discovery of them.

(a)     Plaintiff's Waiver of Rights Under California Civil Code Section 1542. For purposes of Plaintiff's Release, Plaintiff shall be deemed to have, and by operation of the approval of the Settlement by the Court shall have, expressly waived and relinquished to the fullest extent permitted by law the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release. Plaintiff, for himself, has read Section 1542 of the Civil Code of the State of California, which provides as follows:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or Released Party.

Plaintiff understands that Section 1542 gives the right not to release existing claims of which she is not now aware, unless Plaintiff voluntarily chooses to waive this right. Having been so apprised, Plaintiff nevertheless voluntarily waives the rights described in Section 1542 and elects to assume all risks for claims that now exist in his favor, known or unknown.

## VI.    MOTION FOR PRELIMINARY APPROVAL.

6.1     Class Counsel will prepare and file a motion for preliminary approval ("Motion for Preliminary Approval") that complies with the Court's current checklist for Preliminary Approvals.

6.2     Plaintiff's Responsibilities. Plaintiff will prepare all documents necessary for obtaining Preliminary Approval, including: (i) a draft of the notice, and memorandum in support, of the Motion for Preliminary Approval; (ii) a draft proposed Order Granting Preliminary Approval; (iii) a draft proposed Class Notice; (iv) a signed declaration from the Administrator attaching its "not to exceed" bid for administering the Settlement and attesting to its willingness to serve; competency; operative procedures for protecting the security of Class Data; amounts of insurance coverage for any data breach, defalcation of funds or other misfeasance; all facts relevant to any actual or potential conflicts of interest with Class Members; and the nature and extent of any financial relationship with Plaintiff, Defendant, Class Counsel or Defense Counsel; (v) a signed declaration from Plaintiff confirming willingness and competency to serve and disclosing all facts relevant to any actual or potential conflicts of interest with Class

Members, and/or the Administrator; and (vi) all facts relevant to any actual or potential conflict of interest with Class Members, the Administrator. In their Declarations, Plaintiff and Class Counsel Declaration shall aver that they are not aware of any other pending matter or action asserting claims that will be extinguished or adversely affected by the Settlement. Plaintiff's counsel will provide a PDF copy of the Motion documents to Defense counsel for review prior to filing.

6.3     <u>Responsibilities of Counsel</u>. Class Counsel and Defense Counsel are jointly responsible for expeditiously  filing the Motion for Preliminary Approval no later than 90 days after the full execution of this Agreement; obtaining a prompt hearing date for the Motion for Preliminary Approval; and for appearing in Court to advocate in favor of the Motion for Preliminary Approval. Class Counsel is responsible for delivering the Court's Preliminary Approval to the Administrator.

6.4     <u>Duty to Cooperate</u>. If the Parties disagree on any aspect of the proposed Motion for Preliminary Approval and/or the supporting declarations and documents, Class Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to resolve the disagreement. If the Court does not grant Preliminary Approval or conditions Preliminary Approval on any material change to this Agreement, Class Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to modify the Agreement and otherwise satisfy the Court's concerns.

## VII.    SETTLEMENT ADMINISTRATION.

7.1     <u>Selection of Administrator</u>. The Parties have jointly selected Simpluris, Inc. to serve as the Administrator and verified that, as a condition of appointment, Simpluris, Inc. agrees to be bound by this Agreement and to perform, as a fiduciary, all duties specified in this Agreement in exchange for payment of Administration Expenses. The Parties and their Counsel represent that they have no interest or relationship, financial or otherwise, with the Administrator other than a professional relationship arising out of prior experiences administering settlements.

7.2     <u>Employer Identification Number</u>. The Administrator shall use Defendant's  Employer Identification Number for purposes of calculating payroll tax withholdings and providing reports state and federal tax authorities.

7.3     <u>Qualified Settlement Fund</u>. The Administrator shall establish a settlement fund that meets the requirements of a Qualified Settlement Fund ("QSF") under US Treasury Regulation section 468B-1.

7.4     <u>Notice to Class Members</u>. No later than three (3) calendar days after receipt of the Class Data, the Administrator shall notify Class Counsel that the list has been received and state the number of Class Members and Workweeks in the Class Data.

7.5     Using best efforts to perform as soon as possible, and in no event later than 14 calendar

days after receiving the Class Data, the Administrator will send to all Class Members identified in the Class Data, via first-class United States Postal Service ("USPS") mail, the Class Notice with Spanish translation substantially in the form attached to this Agreement as Exhibit A. The first page of the Class Notice shall prominently estimate the dollar amounts of any Individual Class Payment payable to the Class Member, and the number of Workweeks used to calculate these amounts. Before mailing Class Notices, the Administrator shall update Class Member addresses using the National Change of Address database.

7.6     Not later than three (3) days after the Administrator's receipt of any Class Notice returned by the USPS as undelivered, the Administrator shall re-mail the Class Notice using any forwarding address provided by the USPS. If the USPS does not provide a forwarding address, the Administrator shall conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained. The Administrator has no obligation to make further attempts to locate or send Class Notice to Class Members whose Class Notice is returned by the USPS a second time.

7.7     The deadlines for Class Members' written objections, Challenges to Workweeks, and Requests for Exclusion will be extended an additional 14 days beyond the 45 days otherwise provided in the Class Notice for all Class Members whose notice is re-mailed. The Administrator will inform the Class Member of the extended deadline with the re-mailed Class Notice.

7.8     If the Administrator, Defendant, or Class Counsel is contacted by or otherwise discovers any person who believe they should have been included in the Class Data and should have received Class Notice, the Parties will expeditiously meet and confer in person or by telephone, and in good faith, in an effort to agree on whether to include them as Class Members. If the Parties agree, such persons will be Class Members entitled to the same rights as other Class Members, and the Administrator will send, via email or overnight delivery, a Class Notice requiring them to exercise options under this Agreement not later than 14 days after receipt of Class Notice, or the deadline dates in the Class Notice, which ever are later.

7.9     Requests for Exclusion (Opt-Outs). Class Members who wish to exclude themselves (opt-out of) the Class Settlement must send the Administrator, by fax, email, or mail, a signed written Request for Exclusion not later than 45 days after the Administrator mails the Class Notice (plus an additional 14 days for Class Members whose Class Notice is re-mailed). A Request for Exclusion is a letter from a Class Member or his/her representative that reasonably communicates the Class Member's election to be excluded from the Settlement and includes the Class Member's name, last four digits of their social security number, address and email address or telephone number. To be valid, a Request for Exclusion must be timely faxed, emailed, or postmarked by the Response Deadline.

        a) The Administrator may not reject a Request for Exclusion as invalid because it fails to contain all the information specified in the Class Notice. The Administrator shall accept any Request for Exclusion as valid if the

Administrator can reasonably ascertain the identity of the person as a Class Member and the Class Member's desire to be excluded. The Administrator's determination shall be final and not appealable or otherwise susceptible to challenge. If the Administrator has reason to question the authenticity of a Request for Exclusion, the Administrator may demand additional proof of the Class Member's identity. The Administrator's determination of authenticity shall be final and not appealable or otherwise susceptible to challenge.

b) Every Class Member who does not submit a timely and valid Request for Exclusion is deemed to be a Participating Class Member under this Agreement, entitled to all benefits and bound by all terms and conditions of the Settlement, including the Participating Class Members' Releases under Paragraphs 5.2 and 5.3 of this Agreement, regardless whether the Participating Class Member actually receives the Class Notice or objects to the Settlement.

c) Every Class Member who submits a valid and timely Request for Exclusion is a Non-Participating Class Member and shall not receive an Individual Class Payment or have the right to object to the class action components of the Settlement.

7.10    Challenges to Calculation of Workweeks. Each Class Member shall have 45 days after the Administrator mails the Class Notice (plus an additional 14 days for Class Members whose Class Notice is re-mailed) to challenge the number of Class Workweeks allocated to the Class Member in the Class Notice. The Class Member may challenge the allocation by communicating with the Administrator via fax, email or mail. The Administrator must encourage the challenging Class Member to submit supporting documentation. In the absence of any contrary documentation, the Administrator is entitled to presume that the Workweeks contained in the Class Notice are correct so long as they are consistent with the Class Data. The Administrator's determination of each Class Member's allocation of Workweeks shall be final and not appealable or otherwise susceptible to challenge. The Administrator shall promptly provide copies of all challenges to calculation of Workweeks to Defense Counsel and Class Counsel and the Administrator's determination the challenges.

7.11    Objections to Settlement.

a) Only Participating Class Members may object to the class action components of the Settlement and/or this Agreement, including contesting the fairness of the Settlement.

b) Participating Class Members may send written objections to the Administrator, by fax, email, or mail. In the alternative, Participating Class Members may appear in Court (or hire an attorney to appear in Court at their own expense) to present verbal objections at the Final Approval Hearing. A Participating Class Member who elects to send a written objection to the Administrator must do so not later than 45 days after the Administrator's mailing of the Class Notice (plus an additional 14 days for Class Members whose Class Notice was re-

mailed). Upon receipt of an objection, the Administrator shall email a copy to Class Counsel and Defense Counsel.

c) Non-Participating Class Members have no right to object to any of the class
   · action components of the Settlement.

7.12    <u>Administrator Duties</u>. The Administrator has a duty to perform or observe all tasks to be performed or observed by the Administrator contained in this Agreement or otherwise.

7.13    <u>Website, Email Address and Toll-Free Number.</u> The Administrator will establish and maintain and use an internet website to post information of interest to Class Members including the date, time and location for the Final Approval Hearing and copies of the Settlement Agreement, Motion for Preliminary Approval, the Preliminary Approval Order, the Class Notice, the Motion for Final Approval, the Final Approval Order and the Judgment. The Administrator will also maintain and monitor an email address and a toll-free telephone number to receive Class Member calls, faxes and emails.

7.14    <u>Requests for Exclusion (Opt-outs) and Exclusion List</u>. The Administrator will promptly review on a rolling basis Requests for Exclusion to ascertain their validity. Not later than 5 days after the expiration of the deadline for submitting Requests for Exclusion, the Administrator shall email a list to Class Counsel and Defense Counsel containing (a) the names and other identifying information of Class Members who have timely submitted valid Requests for Exclusion ("Exclusion List"); (b) the names and other identifying information of Class Members who have submitted invalid Requests for Exclusion; (c) copies of all Requests for Exclusion from Settlement submitted (whether valid or invalid).

7.15    <u>Weekly Reports</u>. The Administrator must, on a weekly basis, provide written reports to Class Counsel and Defense Counsel that, among other things, tally the number of: Class Notices mailed or re-mailed, Class Notices returned undelivered, Requests for Exclusion (whether valid or invalid) received, objections received, challenges to Workweeks received and/or resolved, and checks mailed for Individual Class Payments ("Weekly Report"). The Weekly Reports must include provide the Administrator's assessment of the validity of Requests for Exclusion and attach copies of all Requests for Exclusion and objections received.

7.16    <u>Workweek Challenges</u>. The Administrator has the authority to address and make final decisions consistent with the terms of this Agreement on all Class Member challenges over the calculation of Workweeks. The Administrator's decision shall be final and not appealable or otherwise susceptible to challenge.

7.17    <u>Administrator's Declaration</u>. Not later than 14 days before the date by which Plaintiff is required to file the Motion for Final Approval of the Settlement, the Administrator will provide to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its due diligence and compliance with all of its obligations under this Agreement, including, but not limited to, its mailing of Class Notice, the

Class Notices returned as undelivered, the re-mailing of Class Notices, attempts to locate Class Members, the total number of Requests for Exclusion from Settlement it received (both valid or invalid), the number of written objections and attach the Exclusion List. The Administrator will supplement its declaration as needed or requested by the Parties and/or the Court. Class Counsel is responsible for filing the Administrator's declaration(s) in Court.

7.18    Final Report by Settlement Administrator. Within 10 days after the Administrator disburses all funds in the Gross Settlement Amount, the Administrator will provide Class Counsel and Defense Counsel with a final report detailing its disbursements by employee identification number only of all payments made under this Agreement. At least 15 days before any deadline set by the Court, the Administrator will prepare, and submit to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its disbursement of all payments required under this Agreement. Class Counsel is responsible for filing the Administrator's declaration in Court.

7.19    Class Size Estimates. Based on its records, Defendant estimates that, as of the date of this Settlement Agreement, (1) there are 699 Class Members and 73,585 Total Workweeks during the Class Period.

7.20    Defendant's Right to Withdraw. If the number of valid Requests for Exclusion identified in the Exclusion List exceeds ten percent (10%) of the total of all Class Members, Defendant may, but is not obligated, elect to withdraw from the Settlement. The Parties agree that, if Defendant withdraws, the Settlement shall be void ab initio, have no force or effect whatsoever, and that neither Party will have any further obligation to perform under this Agreement; provided, however, Defendant will remain responsible for paying all Settlement Administration Expenses incurred to that point. Defendant must notify Class Counsel and the Court of its election to withdraw not later than seven days after the Administrator sends the final Exclusion List to Defense Counsel; late elections will have no effect.

7.21    Motion for Final Approval. Not later than 28 days before the calendared Final Approval Hearing, Plaintiff will file in Court, a motion for final approval of the Settlement, a Proposed Final Approval Order and a proposed Judgment (collectively "Motion for Final Approval"). Plaintiff's counsel will provide a PDF copy of the Motion documents to Defense counsel for review prior to filing.

    a)    Response to Objections. Each Party retains the right to respond to any objection raised by a Participating Class Member, including the right to file responsive documents in Court no later that five court days prior to the Final Approval Hearing, or as otherwise ordered or accepted by the Court.

    b)    Duty to Cooperate. If the Court does not grant Final Approval or conditions Final Approval on any material change to the Settlement (including, but not limited to, the scope of release to be granted by Class Members), the Parties will expeditiously work together in good faith to address the Court's concerns by revising the Agreement as necessary to obtain Final Approval. The Court's

decision to award less than the amounts requested for the Class Representative Service Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or Administrator Expenses Payment shall not constitute a material modification to the Agreement within the meaning of this paragraph.

c) <u>Continuing Jurisdiction of the Court</u>. The Parties agree that, after entry of Judgment, the Court will retain jurisdiction over the Parties, Action, and the Settlement solely for purposes of (i) enforcing this Agreement and/or Judgment, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as are permitted by law.

d) <u>Waiver of Right to Appeal</u>. Provided the Judgment is consistent with the terms and conditions of this Agreement, the Parties, their respective counsel, and all Participating Class Members who did not object to the Settlement as provided in this Agreement, waive all rights to appeal from the Judgment, including all rights to post-judgment and appellate proceedings, the right to file motions to vacate judgment, motions for new trial, extraordinary writs, and appeals. The waiver of appeal does not include any waiver of the right to oppose such motions, writs or appeals. If an objector appeals the Judgment, the Parties' obligations to perform under this Agreement will be suspended until such time as the appeal is finally resolved and the Judgment becomes final, except as to matters that do not affect the amount of the Net Settlement Amount. Class Counsel retains to right to appeal a reduction of Class Counsel Fees Payment, but Defendant shall not be required to pay the Gross Settlement Amount until the Effective Date occurs, which includes the resolution of any appeals by Class Counsel per Section 1.17 herein.

e) <u>Appellate Court Orders to Vacate, Reverse, or Materially Modify Judgment.</u> If the reviewing Court vacates, reverses, or modifies the Judgment in a manner that requires a material modification of this Agreement (including, but not limited to, the scope of release to be granted by Class Members), this Agreement shall be null and void. The Parties shall nevertheless expeditiously work together in good faith to address the appellate court's concerns and to obtain Final Approval and entry of Judgment, sharing, on a 50-50 basis, any additional Administration Expenses reasonably incurred after remittitur.

## VIII.    ADDITIONAL PROVISIONS.

8.1    <u>No Admission of Liability, Class Certification for Other Purposes</u>. This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or should be construed as an admission by Defendant that any of the allegations in the Operative Complaint have merit or that Defendant has any liability for any claims asserted; nor should it be intended or construed as an admission by Plaintiff that Defendant's defenses in the Action have merit. The Parties agree that class certification is for purposes of this Settlement only. If, for any reason the Court does grant Preliminary Approval, Final Approval or enter

Judgment, Defendant reserves the right to contest certification of any class for any reasons, and Defendant reserves all available defenses to the claims in the Action, and Plaintiff reserves the right to move for class certification on any grounds available and to contest Defendant's defenses. The Settlement, this Agreement and Parties' willingness to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (except for proceedings to enforce or effectuate the Settlement and this Agreement).

8.2     <u>Confidentiality Prior to Preliminary Approval</u>. Plaintiff, Class Counsel, Defendant and Defense Counsel separately agree that, until the Motion for Preliminary Approval of Settlement is filed, they and each of them will not disclose, disseminate and/or publicize, or cause or permit another person to disclose, disseminate or publicize, any of the terms of the Agreement directly or indirectly, specifically or generally, to any person, corporation, association, government agency, or other entity except: (1) counsel in a related matter; (2) in response to a court order or subpoena; or (3) in response to an inquiry or subpoena issued by a state or federal government agency. Each Party agrees to immediately notify each other Party of any judicial or agency order, inquiry, or subpoena seeking such information. Plaintiff, Class Counsel, Defendant and Defense Counsel separately agree not to, directly or indirectly, initiate any conversation or other communication, before the filing of the Motion for Preliminary Approval, any with third party regarding this Agreement or the matters giving rise to this Agreement except to respond only that "the matter was resolved," or words to that effect. This paragraph does not restrict Class Counsel's communications with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

8.3     <u>No Solicitation</u>. The Parties separately agree that they and their respective counsel and employees will not solicit any Class Member to opt out of or object to the Settlement, or appeal from the Judgment. Nothing in this paragraph shall be construed to restrict Class Counsel's ability to communicate with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

8.4     <u>Integrated Agreement</u>. Upon execution by all Parties and their counsel, this Agreement together with its attached exhibits shall constitute the entire agreement between the Parties relating to the Settlement, superseding any and all oral representations, warranties, covenants, or inducements made to or by any Party.

8.5     <u>Attorney Authorization</u>. Class Counsel and Defense Counsel separately warrant and Represent that they are authorized by Plaintiff and Defendant, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including any amendments to this Agreement.

8.6     <u>Cooperation.</u> The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying the Settlement Agreement, submitting supplemental evidence and

supplementing points and authorities as requested by the Court. In the event the
Parties are unable to agree upon the form or content of any document necessary to
implement the Settlement, or on any modification of the Agreement that may
become necessary to implement the Settlement, the Parties will seek the assistance
of a mediator, i.e., Judge Hogue and/or the Court for resolution.

8.7    <u>No Prior Assignments</u>. The Parties separately represent and warrant that they have
not directly or indirectly assigned, transferred, encumbered, or purported to assign,
transfer, or encumber to any person or entity and portion of any liability, claim,
demand, action, cause of action, or right released and discharged by the Party in this
Settlement.

8.8    <u>No Tax Advice</u>. Neither Plaintiff, Class Counsel, Defendant nor Defense Counsel
are providing any advice regarding taxes or taxability, nor shall anything in this
Settlement be relied upon as such within the meaning of United States Treasury
Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

8.9    <u>Modification of Agreement</u>. This Agreement, and all parts of it, may be amended,
modified, changed, or waived only by an express written instrument signed by all
Parties or their representatives, and approved by the Court.

8.10   <u>Agreement Binding on Successors</u>. This Agreement will be binding upon, and inure
to the benefit of, the successors of each of the Parties.

8.11   <u>Applicable Law</u>. All terms and conditions of this Agreement and its exhibits will be
governed by and interpreted according to the internal laws of the state of California,
without regard to conflict of law principles.

8.12   <u>Cooperation in Drafting</u>. The Parties have cooperated in the drafting and preparation
of this Agreement. This Agreement will not be construed against any Party on the
basis that the Party was the drafter or participated in the drafting.

8.13   <u>Use of Class Data</u>. Information provided to Class Counsel pursuant to Cal. Evid.
Code §1152, and all copies and summaries of the Class Data provided to Class
Counsel by Defendant in connection with the mediation, other settlement
negotiations, or in connection with the Settlement, may be used only with respect to
this Settlement, and no other purpose, and may not be used in any way that violates
any existing contractual agreement, statute, or rule of court. Not later than 90 days
after the date when the Court discharges the Administrator's obligation to provide a
Declaration confirming the final pay out of all Settlement funds, Plaintiff shall
destroy, all paper and electronic versions of Class Data received from Defendant
unless, prior to the Court's discharge of the Administrator's obligation, Defendant
makes a written request to Class Counsel for the return, rather than the destructions,
of Class Data.

8.14   <u>Headings</u>. The descriptive heading of any section or paragraph of this Agreement is
inserted for convenience of reference only and does not constitute a part of this

Agreement.

8.15    <u>Calendar Days</u>.  Unless otherwise noted, all reference to "days" in this Agreement
shall be to calendar days.  In the event any date or deadline set forth in this
Agreement falls on a weekend or federal legal holiday, such date or deadline shall
be on the first business day thereafter.

8.16    <u>Notice</u>.  All notices, demands or other communications between the Parties in
connection with this Agreement will be in writing and deemed to have been duly
given as of the third business day after mailing by United States mail, or the day sent
by email or messenger, addressed as follows:

To Plaintiff:

**Michael Nourmand**
**mnourmand@nourmandlawfirm.com**
**The Nourmand Law Firm, APC**
**8822 West Olympic Blvd.**
**Beverly Hills, CA 90211**

To Defendant:

**Shahram Samie**
**ssamie@littler.com**
**Littler Mendelson PC**
**633 West Fifth Street, 63rd Floor**
**Los Angeles, CA 90071**

8.17    <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more
counterparts by facsimile, electronically (i.e., DocuSign), or email which for
purposes of this Agreement shall be accepted as an original.  All executed
counterparts and each of them will be deemed to be one and the same instrument if
counsel for the Parties will exchange between themselves signed counterparts.  Any
executed counterpart will be admissible in evidence to prove the existence and
contents of this Agreement.

8.18    <u>Stay of Litigation</u>.  The Parties agree that upon the execution of this Agreement the
litigation shall be stayed, except to effectuate the terms of this Agreement.

**IN WITNESS WHEREOF** this Settlement Agreement has been duly executed by and on behalf of
the Parties, as follows:

**APPROVED AND ACCEPTED.**

**BY: PLAINTIFF GORDON CHAPPELLE**

Dated: _____02/26/2025_____          GORDON CHAPPELLE

**BY: DEFENDANT NATIONAL PASSENGER RAILROAD CORPORATION**
On behalf of Defendant and the Released Parties

Dated: _____March 7, 2025_____

Erin Lynch

Associate General Counsel

**APPROVED AS TO FORM:**

Dated: _____February 26, 2025_____, 2024          **THE NOURMAND LAW FIRM, APC**

Michael Nourmand
James A. De Sario

Attorneys for Plaintiff and Class Members

Dated: _____March 7, 2025_____, 2024          **LITTLER MENDELSON, P.C.**

Shahram Samie
Atticus Lee

Attorneys for Defendants

# EXHIBIT "2"

advertise
on law.com
click here

Stand out
from the crowd

LAW.
First in Legal News and Information

LAWCATAL
COM

## A Firm-by-Firm Sampling of Billing Rates Nationwide

*The National Law Journal* asked the respondents to its 2002 survey of the nation's 250 largest law firms to provide hourly billing rate information for partners and associates firmwide. The firms that supplied information -- including some firms that are not in the NLJ 250 -- are listed below in alphabetical order. The number after a firm's name indicates the total number of attorneys at that firm. The city listed below the name of a firm is the location of the firm's principal office or largest office.

A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W | X | Y | Z

### A  B  C  D

**Akin, Gump, Strauss, Hauer & Feld (1,017)**
(Washington, D.C.)
Partners $350-$600
Associates $170-$330

**Alston & Bird (674)**
(Atlanta)
Partners $330-$575
Associates $170-$500

**Altheimer & Gray (361)**
(Chicago)
Partners $220-$525
Associates $115-$360

**Andrews & Kurth (375)**
(Houston)
Partners $310-$595
Associates $170-$400

**Arent Fox Kintner Plotkin & Kahn (249)**
(Washington, D.C.)
Partners $315-$560
Associates $165-$360

**Armstrong Teasdale (230)**
(St. Louis)
Partners $210-$310
Associates $105-$240

**Arter & Hadden (273)**
(Cleveland)
Partners $215-$450
Associates $150-$285

**Baker, Donelson, Bearman & Caldwell (249)**
(Memphis, Tenn.)
Partners $175-$480
Associates $110-$275

**Ballard Spahr Andrews & Ingersoll (441)**
(Philadelphia)

**Kelley Drye & Warren (358)**
(New York)
Partners $300-$590
Associates $180-$375

**Kramer Levin Naftalis & Frankel (285)**
(New York)
Partners $440-$625
Associates $210-$440

### L  M  N

**Lane Powell Spears Lubersky (175)**
(Seattle)
Partners $225-$380
Associates $175-$260

**Lewis, Rice & Fingersh (170)**
(St. Louis)
Partners $160-$355
Associates $110-$270

**Littler Mendelson (395)**
(San Francisco)
Partners $220-$440
Associates $135-$350

**Locke Liddell & Sapp (408)**
(Houston)
Partners $300-$595
Associates $150-$340

**Loeb & Loeb (175)**
(Los Angeles)
Partners $350-$650
Associates $185-$325

**Lord, Bissell & Brook (325)**
(Chicago)
Partners $165-$510
Associates $140-$285

**Lowenstein Sandler (193)**
(Roseland, N.J.)

Partners $240-$525
Associates $145-$300

Bell, Boyd & Lloyd (226)
(Chicago)
Partners $250-$550
Associates $200-$275

Blackwell Sanders Peper Martin (301)
(Kansas City, Mo.)
Partners $165-$410
Associates $110-$210

Blank Rome Comisky & McCauley (398)
(Philadelphia)
Partners $285-$565
Associates $175-$360

Boult, Cummings, Conners & Berry (89)
(Nashville, Tenn.)
Partners $185-$375
Associates $135-$235

Bracewell & Patterson (362)
(Houston)
Partners $210-$600
Associates $125-$325

Bradley, Arant, Rose & White (181)
(Birmingham, Ala.)
Partners $205-$365
Associates $150-$275

Brinks Hofer Gilson & Lione (138)
(Chicago)
Partners $295-$500
Associates $165-$290

Bryan Cave (841)
(St. Louis)
Partners $225-$720
Associates $135-$410

Buchalter, Nemer, Fields & Younger (137)
(Los Angeles)
Partners $310-$450
Associates $160-$350

Buchanan Ingersoll (362)
(Pittsburgh)
Partners $225-$720
Associates $135-$360

Buckingham, Doolittle & Burroughs (135)
(Akron, Ohio)
Partners $205-$360
Associates $135-$260

Burns, Doane, Swecker & Mathis (97)
(Alexandria, Va.)
Partners $300-$550
Associates $175-$300

Burr & Forman (169)
(Birmingham, Ala.)
Partners $205-$365
Associates $140-$225

Butzel Long (204)
(Detroit)
Partners $205-$380
Associates $135-$215

Partners $285-$525
Associates $140-$295

Luce, Forward, Hamilton & Scripps (202)
(San Diego)
Partners $310-$500
Associates $150-$300

Manatt, Phelps & Phillips (246)
(Los Angeles)
Partners $375-$600
Associates $200-$355

Marshall, Dennehey, Warner, Coleman & Goggin
(208)
(Philadelphia)
Partners $130-$255
Associates $115-$180

Matthews and Branscomb (51)
(San Antonio)
Partners $175-$325
Associates $125-$195

McCarter & English (270)
(Newark, N.J.)
Partners $250-$495
Associates $140-$285

McGuireWoods (559)
(Richmond, Va.)
Partners $210-$575
Associates $85-$325

Michael Best & Friedrich (349)
(Milwaukee)
Partners $180-$425
Associates $180-$240

Miller, Canfield, Paddock and Stone (301)
(Detroit)
Partners $220-$475
Associates $125-$230

Miller & Chevalier (123)
(Washington, D.C.)
Partners $320-$650
Associates $175-$340

Miller Nash (140)
(Portland, Ore.)
Partners $210-$350
Associates $125-$225

Nelson Mullins Riley & Scarborough (282)
(Columbia, S.C.)
Partners $200-$390
Associates $145-$270

Nutter, McClennen & Fish (170)
(Boston)
Partners $330-$480
Associates $175-$300

O – R

Obermayer Rebmann Maxwell & Hippel (110)
(Philadelphia)
Partners $300-$475
Associates $145-$325

Ogletree, Deakins, Nash, Smoak & Stewart
(162)

Cades Schutte Fleming & Wright (59)
(Honolulu)
Partners $185-$325
Associates $135-$205

Carlton Fields (211)
(Tampa, Fla.)
Partners $230-$400
Associates $130-$270

Case Bigelow & Lumbardi (30)
(Honolulu)
Partners $210-$340
Associates $125-$210

Choate, Hall & Stewart (159)
(Boston)
Partners $375-$575
Associates $195-$345

Cooley Godward (560)
(Palo Alto, Calif.)
Partners $330-$600
Associates $190-$425

Covington & Burling (522)
(Washington, D.C.)
Partners $325-$600
Associates $160-$390

Cozen O'Connor (440)
(Philadelphia)
Partners $185-$450
Associates $120-$325

Crosby, Heafey, Roach & May (237)
(Oakland, Calif.)
Partners $234-$454
Associates $170-$320

Cummings & Lockwood (173)
(Stamford, Conn.)
Partners $250-$450
Associates $155-$290

Curtis, Mallet-Prevost, Colt & Mosle (168)
(New York)
Partners $420-$625
Associates $180-$435

Davis Graham & Stubbs (97)
(Denver)
Partners $200-$425
Associates $125-$210

Davis Wright Tremaine (389)
(Seattle)
Partners $225-$525
Associates $130-$270

Day, Berry & Howard (251)
(Hartford, Conn.)
Partners $275-$450
Associates $160-$330

Dickinson Wright (200)
(Detroit)
Partners $215-$410
Associates $130-$210

Dickstein Shapiro Morin & Oshinsky (311)
(Washington, D.C.)
Partners $360-$550

(Atlanta)
Partners $200-$460
Associates $170-$265

Oppenheimer Wolff & Donnelly (246)
(Minneapolis)
Partners $225-$500
Associates $125-$375

Patton Boggs (366)
(Washington, D.C.)
Partners $235-$700
Associates $180-$315

Pennie & Edmonds (233)
(New York)
Partners $365-$500
Associates $190-$360

Pepper Hamilton (389)
(Philadelphia)
Partners $245-$525
Associates $150-$295

Perkins Coie (565)
(Seattle)
Partners $160-$650
Associates $131-$415

Phelps Dunbar (293)
(New Orleans)
Partners $145-$300
Associates $110-$175

Phillips, Lytle, Hitchcock, Blaine & Huber (171)
(Buffalo, N.Y)
Partners $185-$350
Associates $105-$265

Piper Rudnick (794)
(Chicago)
Partners $295-$615
Associates $140-$405

Pitney, Hardin, Kipp & Szuch (195)
(Morristown, N.J.)
Partners $280-$450
Associates $155-$290

Powell, Goldstein, Frazer & Murphy (290)
(Atlanta)
Partners $265-$515
Associates $160-$300

Preston Gates & Ellis (386)
(Seattle)
Partners $180-$500
Associates $120-$410

Reed Smith (739)
(Pittsburgh)
Partners $240-$620
Associates $100-$435

Robinson & Cole (202)
(Hartford, Conn.)
Partners $260-$500
Associates $160-$300

Ross & Hardies (181)
(Chicago)
Partners $260-$465
Associates $160-$290

Associates $180-$340

Dinsmore & Shohl (254)
(Cincinnati)
Partners $190-$345
Associates $125-$235

Dow, Lohnes & Albertson (147)
(Washington, D.C.)
Partners $310-$600
Associates $160-$335

Drinker Biddle & Reath (433)
(Philadelphia)
Partners $280-$450
Associates $145-$275

Duane Morris (492)
(Philadelphia)
Partners $174.86-$523.47
Associates $146.97-$394.36

Dykema Gossett (252)
(Detroit)
Partners $210-$380
Associates $140-$240

E  F  G

Eckert Seamans Cherin & Mellott (193)
(Pittsburgh)
Partners $230-$425
Associates $135-$240

Edwards & Angell (290)
(Boston)
Partners $300-$550
Associates $140-$300

Epstein Becker & Green (333)
(New York)
Partners $220-$540
Associates $150-$350

Fish & Richardson (279)
(Boston)
Partners $350-$500
Associates $185-$360

Foster Pepper & Shefelman (106)
(Seattle)
Partners $225-$400
Associates $140-$250

Foulston Siefkin (73)
(Wichita, Kan.)
Partners $145-$300
Associates $100-$155

Fowler White Boggs Banker (180)
(Tampa, Fla.)
Partners $175-$350
Associates $125-$225

Gardere Wynne Sewell (288)
(Dallas)
Partners $250-$550
Associates $130-$320

Gibbons, Del Deo, Dolan, Griffinger & Vecchione (160)
(Newark, N.J.)
Partners $235-$600
Associates $145-$265

Rutan & Tucker (123)
(Costa Mesa, Calif.)
Partners $250-$425
Associates $165-$275

S – W

Saul Ewing (228)
(Philadelphia)
Partners $250-$475
Associates $145-$265

Schnader Harrison Segal & Lewis (301)
(Philadelphia)
Partners $220-$465
Associates $135-$285 Seyfarth Shaw (505)
(Chicago)
Partners $260-$600
Associates $160-$265

ShawPittman (407)
(Washington, D.C.)
Partners $315-$576
Associates $170-$325

Sheppard, Mullin, Richter & Hampton (336)
(Los Angeles)
Partners $305-$525
Associates $170-$295

Shipman & Goodwin (237)
(Hartford, Conn.)
Partners $235-$360
Associates $140-$230

Sills Cummis Radin Tischman Epstein & Gross (155)
(Newark, N.J.)
Partners $290-$500
Associates $125-$290

Smith, Gambrell & Russell (177)
(Atlanta)
Partners $185-$465
Associates $130-$350

Steel Hector & Davis (295)
(Miami)
Partners $240-$600
Associates $175-$280

Stites & Harbison (213)
(Louisville, Ky.)
Partners $175-$325
Associates $105-$190

Stoel Rives (364)
(Portland, Ore.)
Partners $210-$400
Associates $140-$340

Stradley Ronon Stevens & Young (345)
(Philadelphia)
Partners $200-$465
Associates $140-$250

Strasburger & Price (224)
(Dallas)
Partners $190-$450
Associates $155-$250

Sughrue Mion (94)

JT.4517346

Gray Cary Ware & Freidenrich (402)
(Palo Alto, Calif.)
Partners $310-$620
Associates $195-$345

Greenebaum Doll & McDonald (172)
(Louisville, Ky.)
Partners $190-$365
Associates $130-$205

Greenberg Glusker (104)
(Los Angeles)
Partners $325-$650
Associates $210-$325

Greenberg Traurig (878)
(Miami)
Partners $250-$800
Associates $150-$375

H – K

Haight, Brown & Bonesteel (91)
(Los Angeles)
Partners $200-$300
Associates $115-$175

Hale and Dorr (480)
(Boston)
Partners $350-$675
Associates $230-$395

Haynes and Boone (468)
(Dallas)
Partners $265-$500
Associates $125-$330

Hodgson Russ (189)
(Buffalo, N.Y.)
Partners $200-$475
Associates $110-$320

Hogan & Hartson (937)
(Washington, D.C.)
Partners $230-$750
Associates $90-$405

Holland & Knight (1,273)
(Washington, D.C.)
Partners $200-$575
Associates $145-$365

Holme Roberts & Owen (188)
(Denver)
Partners $215-$525
Associates $145-$275

Hughes Hubbard & Reed (282)
(New York)
Partners $375-$625
Associates $175-$415

Husch & Eppenberger (278)
(St. Louis)
Partners $160-$340
Associates $115-$185

Jackson Lewis (353)
(White Plains, N.Y.)
Partners $245-$450
Associates $150-$350

(Washington, D.C.)
Partners $300-$450
Associates $200-$350

Sutherland Asbill & Brennan (356)
(Atlanta)
Partners $275-$545
Associates $160-$280

Swidler Berlin Shereff Friedman (298)
(Washington, D.C.)
Partners $310-$590
Associates $170-$380

Thelen Reid & Priest (440)
(New York)
Partners $315-$575
Associates $165-$390

Thompson Coburn (280)
(St. Louis)
Partners $190-$400
Associates $105-$220

Thompson & Knight (333)
(Dallas)
Partners $260-$475
Associates $155-$250

Thorp Reed & Armstrong (103)
(Pittsburgh)
Partners $210-$390
Associates $175-$230

Townsend and Townsend and Crew (151)
(San Francisco)
Partners $415-$525
Associates $265-$355

Vedder, Price, Kaufman & Kammholz (213)
(Chicago)
Partners $270-$495
Associates $165-$290

Venable (448)
(Baltimore)
Partners $250-$670
Associates $165-$310

Vorys, Sater, Seymour and Pease (353)
(Columbus, Ohio)
Partners $235-$400
Associates $125-$250

Wiley, Rein & Fielding (221)
(Washington, D.C.)
Partners $300-$525
Associates $160-$290

Williams & Connolly (211)
(Washington, D.C.)
Partners $350-$600
Associates $185-$330

Williams Mullen (237)
(Richmond, Va.)
Partners $185-$370
Associates $125-$225

Winstead Sechrest & Minick (333)
(Dallas)
Partners $250-$540
Associates $145-$300

Jenkens & Gilchrist (573)
(Dallas)
Partners $275-$525
Associates $165-$380

Jenner & Block (990)
(Chicago)
Partners $350-$625
Associates $185-$350

Jones, Walker, Waechter, Poitevant, Carrère &
Denègre (217)
(New Orleans)
Partners $170-$335
Associates $310-$185

Womble Carlyle Sandridge & Rice (437)
(Winston-Salem, N.C.)
Partners $190-$500
Associates $125-$265

Wyatt, Tarrant & Combs (201)
(Louisville, Ky.)
Partners $150-$310
Associates $100-$190

(*The National Law Journal*, December 2002)

---

• About law.com                    • Privacy Policy                    • Terms & Conditions

Copyright 2003 ALM Properties, Inc. All right

EXHIBIT "3"

1    JOSEPH E. JARAMILLO, CA Bar No: 178566
     jjaramillo@gdblegal.com
2    ROBERTA L. STEELE, CA Bar No. 188198
     rsteele@gdblegal.com
3    GOLDSTEIN, DEMCHAK, BALLER,
        BORGEN & DARDARIAN
4    300 Lakeside Drive, Suite 1000
     Oakland, CA. 94612
5    (510) 763-9800
     (510) 835-1417 (fax)
6

7    GRAHAM S.P. HOLLIS, CA Bar No. 120577
     ghollis@gracehollis.com
8    MARTA MANUS CA Bar No. 260132
     mmanus@gracehollis.com
9    GRACEHOLLIS LLP
     3555 Fifth Avenue
10   San Diego, CA 92103
     (619) 692-0800
11   (619) 692-0822 (fax)

12   Attorneys for Plaintiffs ROSA CANTU and
     SANDRA CHU

13          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                 COUNTY OF LOS ANGELES

15

| | |
|---|---|
| 16   ROSA CANTU AND SANDRA CHU, individually and on behalf of others similarly situated, | Case No.: BC441237 |
| 17 | CLASS ACTION [Code Civ. Proc. § 382] |
| 18              Plaintiffs, | REPRESENTATIVE ACTION [Labor Code § 2698, *et seq.*] |
| 19   vs. | |
| 20   PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA, and Does 1 through 100, inclusive, | DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS |
| 21 | |
| 22             Defendants. | |
| 23 | Date:     February 4, 2011 |
| 24 | Time:     9:00 a.m.<br>Dept:     324 |
| 25 | Judge:    Emilie H. Elias |

26

27

28

1    I, Richard M. Pearl, declare:

2    1.    I make this Declaration of my own personal knowledge, and if called to testify, I could

3    and would testify competently to the matters stated herein.

4    A.    Background

5    2.    I am a member in good standing of the California State Bar. I am in private practice as

6    the principal of my own law firm, the Law Offices of Richard M. Pearl. I specialize in issues related to

7    court-awarded attorneys' fees, including the representation of parties in fee litigation and appeals,

8    serving as an expert witness, and serving as a mediator and arbitrator in disputes concerning attorneys'

9    fees and related issues. In this case, I have been asked by Plaintiffs' counsel to express my expert

10    opinion regarding their claim for reasonable attorneys' fees.

11    3.    Briefly summarized, my background is as follows: I am a 1969 graduate of Boalt Hall

12    School of Law, University of California, Berkeley, California. After graduation, I spent fourteen years

13    in federally-funded legal services programs before going into private practice in 1982. From 1977 to

14    1982, I was Director of Litigation for California Rural Legal Assistance, Inc., a statewide legal services

15    program with more than fifty attorneys. Since April 1987, I have been a sole practitioner in the San

16    Francisco Bay Area. Martindale Hubbell rates my law firm "AV." I also have been selected as a

17    Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, and 2010. A copy

18    of my Resume is attached hereto as Exhibit A.

19    4.    Since 1982, my practice has been a general civil litigation and appellate practice, with an

20    emphasis on cases and appeals involving court-awarded attorneys' fees. I have lectured and written

21    extensively on court-awarded attorneys' fees. I have been a member of the California State Bar's

22    Attorneys Fees Task Force and have testified before the State Bar Board of Governors and the

23    California Legislature on attorneys' fee issues. I am the author of California Attorney Fee Awards, (3d

24    ed Cal. CEB 2010). I also was the author of California Attorney Fee Awards, 2d Ed. (Calif. Cont. Ed.

25    of Bar 1994), and its 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007,

26    and 2008 Supplements. This treatise has been cited by the California appellate courts on more than 35

27    occasions. I also authored the 1984, 1985, 1987, 1988, 1990, 1991, 1992, and 1993 Supplements to its

28    predecessor, CEB's California Attorney's Fees Award Practice. In addition, I authored a federal

1

1   manual on attorneys' fees entitled Attorneys' Fees: A Legal Services Practice Manual, published by the

2   Legal Services Corporation. I also co-authored the chapter on "Attorney Fees" in Volume 2 of CEB's

3   Wrongful Employment Termination Practice, 2d Ed. (1997).

4   　　　5.　　　More than 90% of my practice is devoted to issues involving court-awarded attorney's

5   fees. I have been counsel in over 140 attorneys' fee applications in state and federal courts, primarily

6   representing other attorneys. I also have briefed and argued more than 40 appeals, at least 25 of which

7   have involved attorneys' fees issues. In the past ten or so years, I have successfully handled four cases

8   in the California Supreme Court involving court-awarded attorneys' fees: (1) *Delaney v. Baker* (1999)

9   20 Cal. 4th 23, which held that heightened remedies, including attorneys' fees, are available in suits

10  against nursing homes under California's Elder Abuse Act; (2) *Ketchum v. Moses* (2001) 24 Cal. 4th

11  1122, which held, inter alia, that contingent risk multipliers remain available under California attorney

12  fee law, despite the United States Supreme Court's contrary ruling on federal law (note that in

13  Ketchum, I was primary appellate counsel in the Court of Appeal and "second chair" in the Supreme

14  Court); (3) *Flannery v. Prentice* (2001) 26 Cal. 4th 572, which held that in the absence of an agreement

15  to the contrary, statutory attorneys' fees belong to the attorney whose services they are based upon; and

16  (4) *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal. 4th 553, which I handled, along with trial counsel,

17  in both the Court of Appeal and Supreme Court. I also successfully represented the plaintiffs in a

18  previous attorneys' fee decision in the Supreme Court, *Maria P. v. Riles* (1987) 43 Cal. 3d 1281, and

19  represented amicus curiae, along with Richard Rothschild, in the Supreme Court's most recent fee

20  decision, *Vasquez v. State of California* (2009) 45 Cal. 4th 243. I also have handled several Ninth

21  Circuit attorneys' fees matters, including *Davis v. City & County of San Francisco* (9th Cir. 1992) 976

22  F.2d 1536, *Mangold v. CPUC* (9th Cir. 1995) 67 F.3d 1470, *Velez v. Wynne* (9th Cir. 2007) 2007 U.S.

23  App. LEXIS 2194, and *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F.3d 973. *See*

24  Exhibit A.

25  　　　B.　　Plaintiffs' Counsel's Rates

26  　　　6.　　　I have been asked by Plaintiffs' counsel to submit this declaration in support of

27  Plaintiffs' Motion for Final Approval of Class Action Settlement and an Award of Reasonable

28  Attorneys' Fees and Costs. I submit this declaration to provide the Court information concerning

1  hourly rates for attorneys in the San Francisco Bay Area, and in particular to provide information

2  demonstrating that the hourly rates requested by Plaintiffs' counsel in this matter are within the range of

3  market rates being charged in the San Francisco Bay Area and the San Diego market for similar

4  services, i.e. handling and trying complex class actions on behalf of employees against large employers

5  like Pacific Bell Telephone Company in this case.

6       7.     I understand that Plaintiffs' counsel are requesting an award of attorneys' fees at the

7  following rates:

8           a.     Goldstein Demchak Baller Borgen & Dardarian, Oakland, CA

| Name | Grad Year | Billing Rate |
|------|-----------|--------------|
| Roberta L. Steele | 1993 | $600 |
| Laura L. Ho | 1994 | $600 |
| Joseph E. Jaramillo | 1995 | $550 |
| Senior Paralegal | | $195 |
| Paralegal | | $150 |

13           b.     GraceHollis LLP, San Diego, CA

| Name | Grad Year | Billing Rate |
|------|-----------|--------------|
| Graham S.P. Hollis | 1985 | $600 |
| Marta Manus | 2008 | $375 |
| Senior Paralegal | | $170 |

16       8.     Through my writing and practice, I have become familiar with the non-contingent

17  market rates charged by attorneys in California and elsewhere. This familiarity has been obtained in

18  several ways: (1) by handling attorneys' fee litigation; (2) by discussing fees with other attorneys;

19  (3) by obtaining declarations regarding prevailing market rates in cases in which I represent attorneys

20  seeking fees; and (4) by reviewing attorneys' fee applications and awards in other cases, as well as

21  surveys and articles on attorney's fees in the legal newspapers and treatises.

22       9.     The information I have gathered, some of which is summarized below, shows that the

23  rates requested by Plaintiffs' counsel in this case are well in line with the non-contingent market rates

24  charged by litigation attorneys of similar qualifications and experience in San Francisco, San Diego,

25  and similar markets.

26  ///

27  ///

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441237

234747-2

c.    Rates found reasonable in other cases.

Set forth below are rates that were awarded by the courts in the following cases:

### 2010 Rates

(1)    *Savaglio, et al. v. WalMart*, Alameda County Superior Court No. C-835687-7, Order Granting Class Counsel's Motion for Attorneys' Fees, filed September 10, 2010, a wage and hour class action, in which the court found the following hourly rates reasonable (before applying a 2.36 multiplier):

| Years of Experience | Rate |
|---|---|
| 51 | $875 |
| 39 | $750 |
| 38 | $600 |
| 33 | $775 |
| 25 | $550 |
| 23 | $650 |
| 21 | $625 |
| 19 | $610 |
| 18 | $600 |
| 17 | $585 |
| 16 | $570 |
| 15 | $560 |
| 14 | $550 |
| 13 | $525 |
| 12 | $515 |
| 11 | $510 |
| 10 | $505 |
| 9 | $500 |
| 7 | $460 |
| 4 | $435 |
| Law Clerks | $125-$260 |

### 2009 Rates

(1)    *Center for Biological Diversity v. California Fish & Game Commission*, San Francisco Superior Court No. CPF-08-508759, Order Granting Petitioners' Motion for Attorneys' Fees, filed December 1, 2009, in which the court found reasonable the following hourly rates:

| Years of Experience | Rate |
|---|---|
| 25 | $650 |
| 8 | $375 |
| 4 | $250 |
| Law Clerks | $150 |

4

(2)    *Kashmiri et al v. Regents of U.C.*, San Francisco Superior Court, Order Granting Plaintiffs' Motion for Common Fund Attorneys' Fees and Expenses, filed September 30, 2008, in which the court found the following rates reasonable, plus a 3.7 lodestar multiplier:

| Years of Experience | Rate |
|---|---|
| 40 | $750 |
| 22 | $690 |
| 14 | $590 |
| 7 | $420 |
| 4 | $345 |
| 2 | $295 |
| Law Clerks | $200 |
| Paralegals | $195 |

(4)    *Environmental Law Foundation v. Laidlaw Transit, Inc.*, San Francisco Superior Court No. CGC-06-451832, Order Granting Motion for Court Approval of Parties Joint Stipulated Judgment, filed September 22, 2008, in which the court found the following hourly rates reasonable in a Proposition 65 action, plus a 1.25 multiplier:

| Years of Experience | Rate |
|---|---|
| 29 | $750 |
| 26 | $700 |
| 24 | $700 |
| 23 | $650 |
| 18 | $650 |
| 16 | $625 |
| 14 | $600 |
| 10 | $560 |
| 9 | $495-$575 |
| 8 | $475 |
| 7 | $450 |
| 6 | $395 |
| 4 | $325 |
| 2 | $300 |
| 1 | $250 |
| Paralegals | $145-$175 |
| Interns | $125 |

(5)    *Gardner v. Schwarzenegger*, Alameda County Superior Court No. RG06-278911, Order After Hearing filed April 20, 2009, aff'd by unpublished opinion, 2010 Cal. App. Unpub. LEXIS 1240, in which the court found the following 2008 rates reasonable, plus a 1.75 multiplier:

| Years of Experience | Rate |
|---|---|
| 17 | $640 |
| 14 | $590 |
| 8 | $445 |
| Paralegal | $170 |

a.    Rate Information from Surveys and Other Cases:

I have reviewed numerous declarations and depositions filed in other cases, as well as various surveys of legal rates. These include the Westlaw CourtExpress Legal Billing Reports for May, August, and December 2009 (attached hereto as Exhibit B). These sources show the hourly rates for litigation undertaken on a non-contingent basis by the following California law firms, listed in alphabetical order:

Altshuler Berzon LLP

2009 Rates:

| Years Experience | Rate |
|---|---|
| 32 | $775 |
| 15 | $625 |
| 8 | $475 |
| Law Clerks | $200 |
| Paralegals | $195 |

2007 Rates:

| Years Experience | Rate |
|---|---|
| 23 | $700 |
| 15 | $550 |
| 5 | $325 |
| Paralegals | $155-$190 |

Cooley Godward Kronish LLP

2008 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $525-$980 |
| Associates | $285-$570 |

2007 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $470-$875 (average $673) |
| Associates | $250-$555 (average $403) |




1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Coughlin Stoia Geller Rudman & Robbins, LLP

2007 Rates:

| Years Experience | Rate |
|---|---|
| 42 | $700 |
| 19 | $650 |
| 14 | $650 |
| 14 | $600 |
| 13 | $585 |
| 11 | $510 |
| 6 | $460 |
| 5 | $285 |

### Duane Morris LLP

2009 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $325-$795 |
| Associates | $225-$450 |

### Epstein Becker & Green LLP

2009 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $350-$855 |
| Associates | $180-$475 |

### Fenwick & West

2007 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $500-$775 (average $590) |
| Associates | $245-$500 (average $370) |

### Hadsell Stormer

2009 Rates:

| Years Experience | Rate |
|---|---|
| 35 | $775 |
| 20 | $575 |

7

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441237

234747-2




Howard, Rice, Nemerovski, Canady, Falk & Rabkin

2008 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $515-$795 |
| Associates | $275-$510 |

2007 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $495-$775 |
| Associates | $275-$485 |

Litt, Estuar, Harrison & Kitson, LLP

2009 Rates:

| Years Experience | Rate |
|---|---|
| 39 | $800 |
| 16 | $550 |
| 3 | $320 |
| 2 | $285 |
| Paralegals | $125-$235 |
| Law Clerks | $225 |

Loeb & Loeb

2009 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $475-$950 |
| Associates | $285-$450 |

2008 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $450-$925 |
| Associates | $260-$500 |

2007 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $475-$875 (average $606) |
| Associates | $240-$500 (average $400) |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441237

234747-2




### Manatt, Phelps & Philips

**2009 Rates:**

| Years Experience | Rate |
|---|---|
| Partners | $495-850 |
| Associates | $250-$505 |

**2008 Rates:**

| Years Experience | Rate |
|---|---|
| Partners | $495-$850 |
| Associates | $290-$505 |

**2007 Rates:**

| Years Experience | Rate |
|---|---|
| Partners | $520-$785 (average $600) |
| Associates | $265-$480 (average $395) |

### Morrison Foerster

**2009 Rates:**

| Years Experience | Rate |
|---|---|
| 24 | $750 |

**2008 Rates:**

| Years Experience | Rate |
|---|---|
| 45 | $675 |
| 36 | $725 |
| 33 | $785 |
| 14 | $650 |
| 12 | $600 |
| 9 | $560 |
| 7 | $535 |
| 5 | $485 |
| 1 | $520 |
| Paralegals | $185-$230 |

9

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441237

234747-2

2007 Rates:

| Years Experience | Rate |
|---|---|
| 44 | $675 |
| 11 | $550 |
| 8 | $520 |
| 6 | $475 |
| 3 | $250 |

O'Melveny & Myers

2009 Rates:

| Years Experience | Rate |
|---|---|
| 36-37 | $860-$950 |
| 21 | $820 |
| 16-18 | $700-$710. |
| 14 | $595-$675 |
| 10 | $590 |
| 8 | $565 |
| 7 | $540-$565 |
| 5-6 | $480-$520 |
| 2-4 | $395-450 |
| Paralegals | $225-310 |

Reed Smith

2008 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $375-$900 (average $626) |
| Associates | $235-$580 (average $423) |

2007 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $350-$825 (average $558) |
| Associates | $200-$510 (average $374) |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441237

234747-2

**Rudy, Exelrod & Zieff**

**2009 Rates:**

| Years Experience | Rate |
|---|---|
| Partners | |
| 31 | $700 |
| Associates | |
| 3 | $305 |

**2007 Rates:**

| Years Experience | Rate |
|---|---|
| Partners | |
| 29 | $700 |
| 12 | $500 |
| Associates | |
| 10 | $400 |
| 8 | $330 |
| Law Clerk | $200 |
| Paralegal | $150 |

**Schonbrun, DeSimone, Seplow, Harris & Hoffman**

**2009 Rates:**

| Years Experience | Rate |
|---|---|
| 33 | $750 |
| 25 | $625 |
| 24 | $625 |
| 8 | $375 |
| 6 | $370 |
| Paralegals | $125 |

**Sheppard, Mullin, Richter & Hampton**

**2008 Rates:**

| Years Experience | Rate |
|---|---|
| Partners | $475-$795 |
| Associates | $275-$455 |

**2007 Rates:**

| Years Experience | Rate |
|---|---|
| Partners | $425-$795 |
| Associates | $260-$550 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441237

234747-2



Townsend and Townsend and Crew

2009 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $480-$750 |
| Associates | $260-$460 |

Winston & Strawn

2009 Rates:

| Years Experience | Rate |
|---|---|
| Partners | $400-$995 |
| Associates | $210-$670 |

10.    The hourly rates set forth above pertain largely to law firms headquartered in the San Francisco Bay Area and Los Angeles.  To the extent those law firms handle cases in other jurisdictions, like San Diego, they almost always charge the same rates that they do for litigation in the Bay Area.  To the extent Plaintiffs' claim is based upon San Diego rates, however, I also am of the opinion that they are in line with the rates charged by lawyers of comparable skill, experience, and  reputation for comparable work, *i.e.*, complex representative litigation in San Diego.  I base that opinion on the following facts:

a.    In a report filed with the California Public Utilities Commission (attached as Exhibit C), the San Diego Gas & Electric Co. reported that in 2003, it hired outside counsel at rates of from $477-625 per hour for partners with 13 or more years experience, $435 per hour for partners with 8-12 years of practice, and $239-425 per hour for associate attorneys with up to 7 years of practice. Hourly rates have increased significantly since then.

b.    San Diego law firm Luce, Forward, Hamilton & Scripps reports that in 2010, its partner rates ranged from $350 to $670 per hour, and its associate rates ranged from $245 to $445 per hour. In 2009, its partner rates ranged from $360 to $650 per hour, and its associate rates ranged from $240 to $540 per hour.

11.    My research regarding attorneys' fees in California has indicated a consistent increase in fees over the last several years.  Most firms increased their rates over these periods.  Consistent with this market, I raised my rates in 2009 and 2010, and will raise it again in 2011, to reflect both the

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441237

234747-2

1   demand for my services and inflation in costs and legal rates; my rate is still significantly less than

2   many attorneys with comparable experience, expertise, and skills at other firms.

3       12.     The hourly rates set forth above are those charged where full payment is expected

4   promptly upon the rendition of the billing and without consideration of factors other than hours and

5   rates. If any substantial part of the payment were to be deferred for any substantial period of time, for

6   example, or if payment were to be contingent upon outcome or any other factor, the fee arrangement

7   would be adjusted accordingly to compensate the attorneys for those factors.

8       13.     In my experience, fee awards are almost always determined based on current rates, i.e.,

9   the attorney's rate at the time a motion for fees is made, rather than the historical rate at the time the

10  work was performed. This is a common and accepted practice to compensate attorneys for the delay in

11  being paid.

12      C.      Plaintiffs' Counsel's Requested Percentage Fee

13      14.     I understand that Plaintiffs request an award of fees under the common fund doctrine as a

14  percentage of the fund recovered in this litigation sufficient to provide them with a reasonable fee. This

15  is an appropriate request because this is a fully-paid, non-reversionary settlement in which the value of

16  the class recovery is fully monetized at $2,000,000, inclusive of fees, expenses, and settlement

17  administration costs. Under these circumstances, courts award fees as percentages of the common fund

18  where they are in line with the range of fees freely negotiated in the legal marketplace in comparable

19  litigation.

20      15.     Based on the information I have gathered and my own experience and expertise, it is my

21  opinion that the 33 1/3% common fund fee recovery requested by Class Counsel is, in the

22  circumstances of this case, reasonable and consistent with awards approved by other California state

23  courts reviewing class action settlements, based on the factors discussed below.

24      16.     My opinion is based in part on the fact that, as a common fund case with the fund

25  consisting of $2 million, Plaintiffs' claimed fee of 33 1/3% is entirely consistent with the legal

26  marketplace for attorneys' services in contingency fee cases involving similar financial recoveries. In

27  the course of my practice, I have become familiar with the contingency fee percentages charged by law

28  firms to sophisticated institutional clients in large damage cases. Based on that knowledge and my

13

1  experience in the attorneys' fees field generally, it is my opinion that if competent and experienced

2  attorneys and a sophisticated client were to negotiate a contingency fee agreement under the

3  circumstances where (a) a high risk, complex case was being contemplated, (b) it is anticipated that the

4  opposition would be vigorous, and (c) the attorneys would not be paid unless and until they were able to

5  obtain significant relief for the client, the sophisticated client would be more than willing to enter into a

6  retainer agreement under which the client would pay only the litigation out-of-pocket costs, and the

7  attorneys could reasonably expect to recover 5% to 35% of the total value of any recovery as fees.

8        17.    An award of 33 1/3% of the common fund requested by Class Counsel here is consistent

9  with legal marketplace for attorneys' services in contingency fee cases because of (a) the high risk

10  involved in litigating an incentive compensation plan case on behalf of nearly 100 California

11  employees; (b) the vigorous defense presented by the large defense firm that represents Defendant here;

12  (c) the relatively small size of the common fund, which weighs toward a higher percentage; and (d) the

13  fact that here, unlike in the paradigm market practices situation described in the previous paragraph,

14  Class Counsel were obligated to advance the substantial litigation costs on a contingent basis with risk

15  of delay in repayment as well as possible non-repayment, and to represent Plaintiffs through appeal of

16  any judgment in this case. This award would also be appropriate to encourage settlement, reward

17  counsel for maximizing their clients' recoveries, and promote the private enforcement of the wage and

18  hour laws Plaintiffs allege were violated.

19      **D.**    **Plaintiffs' Counsel's Lodestar Multiplier**

20        18.    Courts often cross-check a percentage-based fee against a lodestar based fee to determine

21  if it is reasonable. I understand that Plaintiffs' lodestar here is $332,383.88 on non-fees work. The

22  $666,667 fee award requested represents a 2 multiplier on the non-fees lodestar.

23        19.    The expense and risk of public interest litigation has not diminished over the years; to

24  the contrary, these cases are in many ways more difficult than ever. As a result, fewer and fewer

25  attorneys and firms are willing to take on such litigation, and the few who are willing to do so can only

26  continue if their fee awards reflect true market value. Attorneys who litigate on a wholly or partially

27  contingent basis expect to receive significantly higher effective hourly rates in cases where

28  compensation is contingent on success. As the case law recognizes, this does not result in any

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441217
234747-2

1  "windfall" or undue "bonus." In the legal marketplace, a lawyer who assumes a significant financial

2  risk on behalf of a client rightfully expects that his or her compensation will be significantly greater

3  than if no risk was involved (i.e., if the client paid the bill on a monthly basis), and that the greater the

4  risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to

5  reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes

6  them competitive in the legal marketplace, helping to ensure that meritorious cases will be brought to

7  enforce important public interest policies and that clients who have meritorious claims will be more

8  likely to obtain qualified counsel.

9     20.    In my experience, lodestar multipliers of 2 to 4 are typical for class actions such as this

10  case. Plaintiffs' requested fee falls well within this range.

11     E.    Plaintiffs' Counsel's Out-of-Pocket Expenses.

12     21.    I have reviewed the billing practices of hundreds of attorneys in California. Based on

13  my experience and knowledge of these billing practices, I am aware that it is a common practice for

14  firms to bill their clients for out-of-pocket expenses incurred in litigation on a monthly basis as they are

15  incurred. Such expenses include, but are not limited to, charges incurred for copying, long-distance

16  telephone calls, postage, messengers, travel, deposition and hearing transcripts, legal and non-legal

17  computer research services, mediation services, and expert witnesses. I am informed that Plaintiffs

18  expended $16,258.08 in out-of-pocket litigation expenses in this case, including $8,000 for the services

19  of an experienced and skilled mediator, David Rotman, who brokered the settlement in this case. Based

20  on my knowledge and experience of such costs and billing practices, it is my opinion that these

21  expenses are reasonable given the complex nature of this case.

22     If called as a witness, I could and would competently testify from my personal knowledge to the

23  facts stated herein. I declare under penalty of perjury under the laws of the state of California the

24  foregoing is true and correct.

25  Executed this 4th day of January, 2011, at Berkeley, California.

26

27  RICHARD M. PEARL

28

234747-2   DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS - CASE NO.: BC441237

<u>Gordon Chappelle, et al. v. National Railroad Passenger Corp., et al.</u>
United States District Court - Central District of California Court
Case No.: 2:24-cv-02667-PVC

I, Alejandra Beltran the undersigned, declare that I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within entitled action; my business address is 8822 West Olympic Boulevard, Beverly Hills, California 90211.

On October 3, 2025, I served the following document(s) described as:

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ENHANCEMENT AWARD, REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL NOURMAND IN SUPPORT THEREOF**

Shahram Samie, Esq.
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067

The above document(s) were served on the interested parties in this action as follows:

*All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the above-reference case number.*

BY ELECTRONIC MAIL: As follows: I am readily familiar with our office's practice of electronic mail transmission; on this date the document enumerated above was transmitted by electronic mail transmission and that the transmission was reported as complete and delivered, and without error.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this Proof of Service was executed on October 3, 2025, at Beverly Hills, California.

<u>/s/ Alejandra Beltran</u>
Alejandra Beltran